UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK

COUNTY OF SUFFOLK

-------------------------------------------------------------------------------X

HARSHARAN SETHI,

                         Plaintiff,

                 -against-

QUALITY HEALTH PLANS OF NEW YORK, INC., SAFIA KHAN, RICHARD CLARK, SABIHA KHAN, DR. HAIDER ALI KHAN, NAZEER KHAN, ARAIN NAWAZ, DR. RICHARD BONANO, AZIMA BANO, QHP FINANCIAL GROUP INC.

                     Defendants.

-------------------------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 13 2019 ★

LONG ISLAND OFFICE

Index No.:

Plaintiff Demands Jury Trial

**CV19 3499**

Verified Complaint

Venue based on Plaintiff's residence and Defendants business

**BRODIE, J.**

**LINDSAY, M.J.**

       Plaintiff Harsharan Sethi, representing self as *Pro se,* individually complaining of Defendants individually and collectively, respectfully sets forth and alleges, upon information and belief, of the following:

## NATURE OF THE ACTION

1.   This lawsuit is brought by Plaintiff on behalf of himself under:
       a.  The False Claims Act, 31 U.S.C. 3729 et seq. (the "False Claims Act"), to recover damages and penalties against Defendant Quality Health Plans of New York, Inc. for retaliation.
       b.  Title 41 USC Section 4712, to recover damages and penalties against Defendant Quality Health Plans of New York, Inc. for reprisal.
       c.  NYLL Section 215 for Retaliation

2.   This lawsuit is brought by Plaintiff on behalf of himself for wrongful termination to recover damages and penalties against Defendants under:
       a.  Cat's Paw Liability.
       b.  Violation of mandated company and public policy.

    c.  Illegitimate or legally invalid cause claim.

    d.  Breach of Implied Covenant of Good faith and Fair Dealing.

3.    This lawsuit is brought by Plaintiff on behalf of himself to recover damages and penalties against all Defendants under:

    a.  Common Law Fraud.

    b.  Constructive Fraud.

    c.  Defamation per se.

    d.  Breach of Contract.

    e.  Breach of Fiduciary and violations of 29 U.S.C Section 1140, 1141 under ERISA laws.

    f.  RICO, Violation of 18 U.S.C. §§ 1961(5), 1962(a), 1962(b), 1962(c)1962(d).

    g.  Civil Conspiracy.

    h.  Piercing the Corporate Veil.

4.    This lawsuit also seeks to recover overtime compensation and other damages for Plaintiff who worked for Quality Health Plans of New York, Inc. (hereinafter "QHPNY").

5.    QHPNY is a Medicare Advantage HMO, a federal contractor that provides a broad range of comprehensive health services to mostly frail and elderly members.[1] QHPNY's home office is located at 2805 Veterans Memorial Highway, Suite 17, Ronkonkoma, NY 11779.[2]

6.    Upon information and belief, QHPNY is engaged inter-state and inter-continent/international commerce with multiple offices and users spread across states and continents.

7.    According to its website, QHPNY is physician-owned and offers six different Medicare Advantage Plans to members.

8.    To carry out their services, QHPNY hired Plaintiff as the manager of Management Information Systems ("MIS"), who was tasked with IT systems and network related desktop and user support, maintenance, setup, troubleshooting, repair, computer cleaning, revamping, recycling, resetting, removing malicious viruses, spywares, malwares, backup and archive. making them available for use and re-use for QHPNY users. Plaintiff's primary duties and responsibilities involved providing QHPNY's staff/users with technical desktop support, ensuring that their computers could connect to the company's servers and make sure their computers were working properly in their cubicles.

9.    Plaintiff did not manage anyone and Plaintiff's primary duties did not include exercise of discretion and or independent judgment with respect to any matters of significance to management or general business operations of the employer.

10.    Despite being a non-exempt computer employee, Defendant has failed to properly pay Plaintiff overtime compensation at 1.5 times his regular rate of pay when he worked over 40 hours per week.

11.    In that regard, Plaintiff received a set salary, payable biweekly, regardless of the number of hours he worked each week.

---

[1] About Us, available at http://QHPNY.com/about-us/ (last visited April 2, 2019).
[2] Contact Us, available at http://QHPNY.com/contact-us/ (last visited April 2, 2019).

12. Moreover, Defendant provided Plaintiff with paystubs that failed to reflect his actual hours worked and did not keep track of the number of hours worked by Plaintiff each day and week.

13. Plaintiff brings this action pursuant to the Fair Labor Standards Act, 29 U.S.C. 201 et seq. ("FLSA").

14. Plaintiff also brings this action to remedy violations of the of the retaliation provisions of the False Claims Act, violations of wage and hour law under the NYLL, Article 6, 190 et seq., and Article 19, 650 et seq., and the supporting New York State Department of Labor Regulations.

15. Plaintiff also brings this action to remedy all violations relevant to his wrongful termination alleged herein as applicable under various federal and state laws.

16. Plaintiff also brings this action to remedy violations relevant to breach of contract, fraud, RICO and conspiracy as applicable under various federal and state laws.

## THE PARTIES

### Harsharan Sethi

17. Harsharan Sethi, Plaintiff (hereinafter "Plaintiff"), is an adult individual who is a resident of Nassau County, New York.

18. Plaintiff was employed by QHPNY, as manager of MIS (Management Information Systems) from on or around December 11, 2015 through July 25, 2018.

19. Plaintiff is a covered employee within the meaning of the FLSA and the NYLL.

### Corporate Defendant

### Quality Health Plans of New York, Inc.

20. Quality Health Plans of New York, Inc. ("QHP"), is a Federally controlled and regulated domestic business corporation organized and existing under the laws of the State of New York.

21. QHPNY's principal executive office is located at 2805 Veterans Memorial Highway, Suite 17, Ronkonkoma, NY 11779 and operated under federal contract H2773

22. QHPNY is a Federal Contractor and covered employer within the meaning of the FLSA, NYLL, and at all times relevant, employed Plaintiff.

23. At all times relevant, QHP has maintained control, oversight, and direction over Plaintiff, including timekeeping, payroll, and other employment practices that applied to him.

24. QHPNY is engaged in inter-state and inter-continent commerce with multiple offices and users spread across states and continents.

25. Upon information and belief, at all relevant times QHPNY was actively involved in managing the day to day operations of QHPNY, and also of QHP, DMC, and other QHPNY claimed vendors HCT, Medly, Ultimed MCAIPA, Kappa, SNS Consulting, and has also had the power to stop any illegal practices including illegal pay practices at QHPNY that harmed Plaintiff.

26. Upon information and belief at all relevant times, QHNYP has had the power to transfer the assets and/or liabilities of QHPNY, QHP, DMC, and other QHPNY claimed vendors HCT, Medly, Ultimed

MCAIPA, Kappa, SNS Consulting, and has had the power to close, shut down, and/or sell QHPNY, QHP, DMC, and other QHPNY claimed vendors HCT, Medly, Ultimed MCAIPA, Kappa, SNS Consulting

27. Upon information and belief at all relevant times, QHPNY owned and or controlled, maintained

28. Upon information and belief at all relevant times, QHPNY provided health care services to its own members in collusion with its claimed vendors DMC, HCT, MCAIPA, Medly in USA and India.

29. QHPNY and Plaintiff's 401k plan, accounts and funds and is covered entity under ERISA laws.

30. Upon information and belief, at all relevant times, QHPNY has had an annual gross volume of sales in excess of $500,000.

**QHP Financial Group, Inc.**

31. Upon information and belief QHP Financial Group, Inc. (hereinafter "QHP") is parent holding company of QHPNY Haider, Nazeer, Safia, Nazeer, as majority stockholders and Nawaz and Bonanno as indirect minority stockholders.

32. Upon information and belief, QHP's principal executive office in NY is also located at 2805 Veterans Memorial Highway, Suite 17, Ronkonkoma, NY 11779. (See Federal Government communicating Sanctions to the address Exhibit D).

33. Upon information and belief, QHP is holder of federal contract H2773 from CMS for QHPNY which operates under such contract under agreed upon holding system with Center For Medicare and Medicaid Services (hereinafter "CMS") and NYS Department of Financial Services (hereinafter "DFS"), under which federal contract QHPNY operated and hired Plaintiff as Manager MIS.

34. Upon information and belief, at all relevant times QHP was actively involved in managing the day to day operations of QHPNY, QHP, DMC, and other QHPNY claimed vendors HCT, Medly, Ultimed MCAIPA, Kappa, SNS Consulting, and has also had the power to stop any illegal practices including illegal pay practices at QHPNY that harmed Plaintiff.

35. Upon information and belief at all relevant times, QHP has had the power to transfer the assets and/or liabilities of QHPNY, QHP, DMC, and other QHPNY claimed vendors HCT, Medly, Ultimed MCAIPA, Kappa, SNS Consulting, and has had the power to close, shut down, and/or sell QHPNY, QHP, DMC, and other QHPNY claimed vendors HCT, Medly, Ultimed MCAIPA, Kappa, SNS Consulting.

36. As such QHPNY is engaged in inter-state and inter-continent commerce with multiple offices and users spread across states and continents.

37. At all relevant times, QHP has had an annual gross volume of sales in excess of $500,000.

**Individual Defendants**
**Dr. Haider Ali Khan:**

38. Upon information and belief, at all relevant times Dr. Haider Ali Khan (hereinafter "Haider") was the MIS Director owner, manager, stockholder, and controlled operations of QHPNY, QHP and also of Delta Medical Care, Inc. (hereinafter DMC), and other QHPNY claimed vendors House Call Telemed,

Inc (herein after "HCT"), MedlyCare, LLC. (hereinafter "Medly"), Ultimed Health, LLC. (hereinafter "Ultimed"), MCAIPA, Kappa, VHG, SNS Consulting.

39. At all relevant times, Haider has had power over personnel decisions at QHPNY, QHP and other QHPNY claimed vendors DMC HCT, Medly, Ultimed MCAIPA, Kappa, VHG, SNS Consulting including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment and has had power over payroll decisions at QHP, including the power to retain time and/or wage records.

40. At all relevant times Haider and had the power to hire and fire plaintiff, supervise and control his work schedules, establish and control the terms and conditions of his employment, and determine the rate and method of his compensation.

41. Upon information and belief, at all relevant times Haider had ownership interests in QHPNY, QHP and also in DMC, and other QHPNY claimed vendors HCT, Medly, Ultimed MCAIPA, Kappa, VHG, SNS Consulting.

42. At all relevant times Haider was actively involved in managing the day to day operations of QHPNY, QHP and also in DMC, and other QHPNY claimed vendors HCT, Medly, Ultimed MCAIPA, Kappa, VHG, SNS Consulting, and has also had the power to stop any illegal practices including illegal pay practices at QHPNY that harmed Plaintiff.

43. Upon information and belief at all relevant times, Haider has had the power to transfer and or cause transfer of the assets and/or liabilities of QHPNY, QHP, and some QHPNY claimed vendors, and has had the power to close/sell and or power to cause, closure/sale/shut down of QHPNY, QHP, and some QHPNY claimed vendors.

44. Upon information and belief at all relevant times Haider had the power to enter into and or cause contracts on behalf of QHPNY, QHP and some QHPNY vendors.

45. Upon information and belief at all relevant times, Haider provided health care services to QHPNY members in collusion with QHPNY under its claimed vendors DMC, HCT, MCAIPA, Medly in USA and India.

46. Upon information and belief at all relevant times, Haider owned controlled, maintained QHPNY and Plaintiff's 401k plan, accounts and funds and is covered under ERISA laws.

47. Haider is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed Plaintiff, and is sued herein in his individual and official capacity.

**Safia Khan:**

48. Upon information and belief, at all relevant times Safia Khan (hereinafter "Safia") was the Vice President, owner, stockholder, and Director Board of QHPNY, QHP and controlled operations of QHPNY, DMC, and other QHPNY claimed vendors HCT, Medly, Ultimed MCAIPA, Kappa, VHG, SNS Consulting.

49. At all relevant times Safia had the power to hire and fire plaintiff, supervise and control his work schedules, establish and control the terms and conditions of his employment, and determine the rate

and method of his compensation, and also had ownership interests in QHPNY, QHP and some QHPNY claimed vendors.

50. Upon information and belief, at all relevant times Safia was actively involved in managing the day to day operations of QHPNY, QHP and some QHPNY claimed vendors, and has also had the power to stop any illegal practices including illegal pay practices at QHPNY that harmed Plaintiff.

51. Upon information and belief at all relevant times, Safia has had the power to transfer and or cause transfer of the assets and/or liabilities of QHPNY, QHP, and some QHPNY claimed vendors, and has had the power to close/sell and or power to cause, closure/sale/shut down of QHPNY, QHP, and some QHPNY claimed vendors.

52. Upon information and belief at all relevant times Safia had the power to enter into and or cause contracts on behalf of QHPNY, QHP and some QHPNY vendors.

53. Upon information and belief at all relevant times, Safia provided health care services to QHPNY members in collusion with QHPNY under its claimed vendors DMC, HCT, MCAIPA, Medly in USA and India.

54. Upon information and belief at all relevant times, Safia controlled, maintained QHPNY and Plaintiff's 401k plan, accounts and funds and is covered under ERISA laws.

55. Safia is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed Plaintiff, and is sued herein in her individual and official capacity.

**Richard Clark**

56. Upon information and belief, at all relevant times Richard Clark (hereinafter "Clark") was the CFO and HR Manager of QHPNY, and controlled operations of QHPNY, QHP and also of DMC and other QHPNY claimed vendors HCT, Medly, Ultimed MCAIPA, Kappa, VHG, SNS Consulting.

57. At all relevant times Clark and had the power to hire and fire plaintiff, supervise and control his work schedules, establish and control the terms and conditions of his employment, and determine the rate and method of his compensation.

58. At all relevant times Clark was actively involved in managing the day to day operations of QHPNY, QHP and some QHPNY claimed vendors, and has also had the power to stop any illegal practices including illegal pay practices at QHPNY that harmed Plaintiff.

59. Upon information and belief at all relevant times, Clark has had the power to transfer and or cause transfer of the assets and/or liabilities of QHPNY, QHP, and some QHPNY claimed vendors, and has had the power to close/sell and or power to cause, closure/sale/shut down of QHPNY, QHP, and some QHPNY claimed vendors.

60. Upon information and belief at all relevant times Clark had the power to enter into and or cause contracts on behalf of QHPNY, QHP and some QHPNY vendors.

61. Upon information and belief at all relevant times, Clark controlled, maintained QHPNY and Plaintiff's 401k plan, accounts and funds and is covered under ERISA laws.

62.   Clark is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed Plaintiff, and is sued herein in his individual and official capacity.

**Dr. Nazeer Khan**

63.   Upon information and belief, at all relevant times Dr. Nazeer (hereinafter "Nazeer") was the Director, owner, stockholder, of QHPNY, controller, operator of QHPNY, DMC, and other QHPNY claimed vendors HCT, Medly, Ultimed MCAIPA, Kappa, VHG, SNS Consulting.

64.   At all relevant times Nazeer had the power to hire and fire plaintiff, supervise and control his work schedules, establish and control the terms and conditions of his employment, and determine the rate and method of his compensation, and also had ownership interests in QHPNY, QHP and some QHPNY claimed vendors.

65.   Upon information and belief, at all relevant times Nazeer was actively involved in managing the day to day operations of QHPNY, QHP and some QHPNY claimed vendors, and has also had the power to stop any illegal practices including illegal pay practices at QHPNY that harmed Plaintiff.

66.   Upon information and belief at all relevant times, Nazeer has had the power to transfer and or cause transfer of the assets and/or liabilities of QHPNY, QHP, and some QHPNY claimed vendors, and has had the power to close/sell and or power to cause, closure/sale/shut down of QHPNY, QHP, and some QHPNY claimed vendors.

67.   Upon information and belief at all relevant times and had the power to enter into and or cause contracts on behalf of QHPNY, QHP and some QHPNY vendors.

68.   Upon information and belief at all relevant times, Nazeer provided health care services to QHPNY members in collusion with QHPNY under its claimed vendors DMC, HCT, MCAIPA, Medly in USA and India.

69.   Upon information and belief at all relevant times, Nazeer owned controlled, maintained QHPNY and Plaintiff's 401k plan, accounts and funds and is covered under ERISA laws.

70.   Nazeer is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed Plaintiff, and is sued herein in his individual and official capacity.

**Sabiha Khan**

71.   Upon information and belief, at all relevant times Sabiha Khan (hereinafter "Sabiha") was the Compliance Director, owner, stockholder of QHPNY, was stockholder and controller, operator of QHPNY, QHP, and some QHPNY claimed vendors DMC, HCT, Medly, Ultimed MCAIPA, Kappa, VHG, SNS Consulting.

72.   Upon information and belief Sabiha had the power to hire and fire plaintiff, supervise and control his work schedules, establish and control the terms and conditions of his employment, and determine the rate and method of his compensation.

73.   Upon information and belief Sabiha also had ownership, controlling interests in QHPNY, QHP and some QHPNY claimed vendors.

74. Upon information and belief, at all relevant times Sabiha was actively involved in managing the day to day operations of QHPNY, QHP, and some QHPNY claimed vendors, and had the power to stop any illegal practices including illegal pay practices at QHPNY that harmed Plaintiff.

75. Upon information and belief at all relevant times, Sabiha has had the power to transfer and or cause transfer of the assets and/or liabilities of QHPNY, QHP, and some QHPNY claimed vendors, and has had the power to close/sell and or power to cause, closure/sale/shut down of QHPNY, QHP, and some QHPNY claimed vendors.

76. Upon information and belief at all relevant times Sabiha had the power to enter into and or cause contracts on behalf of QHPNY, QHP and some QHPNY vendors.

77. Upon information and belief at all relevant times, Sabiha provided health care services to QHPNY members in collusion with QHPNY under its claimed vendors DMC, HCT, MCAIPA, Medly in USA and India.

78. Upon information and belief at all relevant times, Sabiha owned controlled, maintained QHPNY and Plaintiff's 401k plan, accounts and funds and is covered under ERISA laws.

79. Sabiha is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed Plaintiff, and is sued herein in her individual and official capacity.

**Dr. Arain Nawaz**

80. Upon information and belief, at all relevant times Dr. Arain Nawaz (hereinafter "Nawaz") was the Chairman of Board of QHPNY, controller, operator of QHPNY, QHP and owned, controlled operations of DMC, and other QHPNY claimed vendors HCT, Medly, Ultimed MCAIPA, Kappa, VHG etc.

81. At all relevant times, Nawaz and has had the power to stop any illegal practices at QHPNY that harmed Plaintiff.

82. Upon information and belief at all relevant times, Nawaz has had the power to transfer and or cause transfer the assets and/or liabilities of QHPNY and has had ownership, controlling interests in QHPNY, QHP and some QHPNY claimed vendors, and has had the power to close/sell, and or cause closure shut down, and/or sale of QHPNY, QHP and some QHPNY claimed vendors.

83. Upon information and belief at all relevant times Nawaz and had the power to enter into and or cause contracts on behalf of QHPNY, QHP and some QHPNY vendors.

84. Upon information and belief at all relevant times, Nawaz provided health care services to QHPNY members in collusion with QHPNY under its claimed vendors DMC, HCT, MCAIPA, Medly in USA and India.

85. Upon information and belief at all relevant times, Nawaz owned controlled, maintained QHPNY and Plaintiff's 401k plan, accounts and funds and is covered under ERISA laws.

86. Nawaz is sued herein in his individual and official capacity.

**Dr. Richard Bonanno**

87. Upon information and belief, at all relevant times Dr. Richard Bonanno (hereinafter "Bonanno") was the Chief Medical Officer and Director of Board of QHPNY, operator of QHPNY, DMC, and or other QHPNY claimed vendors HCT, Medly, Ultimed MCAIPA, Kappa, VHG.

88. At all relevant times, Bonanno and has had the power to stop any illegal practices at QHPNY that harmed Plaintiff.

89. Upon information and belief at all relevant times, Bonanno has had the power to transfer and or cause transfer the assets and/or liabilities of QHPNY and has had ownership, controlling interests in QHPNY, QHP and some QHPNY claimed vendors, and has had the power to close/sell, and or cause closure shut down, and/or sale of QHPNY, QHP and some QHPNY claimed vendors.

90. Upon information and belief at all relevant times Bonanno and had the power to enter into and or cause contracts on behalf of QHPNY, QHP and some QHPNY vendors.

91. Upon information and belief at all relevant times, Bonanno provided health care services to QHPNY members in collusion with QHPNY under its claimed vendors DMC, HCT, MCAIPA, Medly in USA and India.

92. Bonanno is sued herein in his individual and official capacity.

**Azima Bano**

93. Upon information and belief at all relevant times, Azima Bano (hereinafter "Bano") was the Claims controller, adjudicator and operator of QHPNY, was stockholder, owner, controller, operator of DMC, and other QHPNY claimed vendors HCT, Medly, Ultimed MCAIPA, Kappa, SNS Consulting. and also had ownership, controlling interests in DMC, and other QHPNY claimed vendors HCT, Medly, Ultimed, MCAIPA, Kappa, SNS Consulting.

94. At all relevant times, Bano and has had the power to stop any illegal practices at QHPNY that harmed Plaintiff.

95. Upon information and belief at all relevant times, Bano has had the power to transfer and or cause transfer the assets and/or liabilities of QHPNY and has had ownership, controlling interests in QHPNY, QHP and some QHPNY claimed vendors, and has had the power to close/sell, and or cause closure shut down, and/or sale of QHPNY, QHP and some QHPNY claimed vendors.

96. Upon information and belief at all relevant times Bano and had the power to enter into and or cause contracts on behalf of QHPNY, QHP and some QHPNY vendors.

97. Upon information and belief at all relevant times, Bano provided health care services to QHPNY members in collusion with QHPNY under its claimed vendors DMC, HCT, MCAIPA, Medly in USA and India.

98. Upon information and belief at all relevant times, Bano owned controlled, maintained QHPNY and Plaintiff's 401k plan, accounts and funds and is covered under ERISA laws.

99. Bano is sued herein in his individual and official capacity.

**JURISDICTION AND VENUE**

100. This Court has jurisdiction over the claims brought under the False Claims Act pursuant to 31 U.S.C. 3730(a)(h), 28 U.S.C. 1331, 1345, and 1367.

101. This Court has jurisdiction over the claims brought under Title 41 USC Section 4712, Breach of Fiduciary and violations of 29 U.S.C Section 1140, 1141 under ERISA laws and RICO, Violation of 18 U.S.C. §§ 1961(5), 1962(c), 1962(d)

102. This Court has subject matter jurisdiction over the FLSA and NYLL claims pursuant to 28 U.S.C. 1331, 1332 and 1337, and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1367.

103. This Court has jurisdiction over all the claims nature of action as stated herein above.

104. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendant conducts business in this District.

## PLAINTIFFS' FACTUAL BACKGROUND AND ALLEGATIONS

### Retaliation Against Plaintiff

105. Plaintiff was employed by Defendant QHPNY as Manager of MIS from on or around December 11, 2015 through July 25, 2018.

106. Defendant terminated Plaintiff on or about July 25, 2018.

107. In June 2018, Plaintiff was told by CFO/HR Manager Richard Clark that, he would report directly and exclusively to Dr. Frank Olsen, CEO, as his only supervisor/manager from whom he will take orders beginning June 2018. Proper HR forms with such order was provided as required per rules, regulations and compliance and it was also confirmed by the CEO Dr. Frank Olsen.

108. During his employment Plaintiff found serious and major violations of rules law and regulations at QHPNY.

109. Upon information and belief, all such serious intentional violations at QHPNY were repetitive and habitual and collaboratively and collusively conspired and perpetrated individually, collectively and collaboratively by Defendants, who violated rules, laws, regulations who engaged in misrepresentations, fraudulent concealments and omissions, against state and federal regulators, with corrupt intent inter alia to conceal fully controlled entities and defraud federal and state regulators to maintain and or retain such federal contracts obtained on such material misrepresentations and at knowing expense of endangering health, and care, life and safety of QHPNY's 5000+ mostly frail and elderly members.

110. Upon information and belief, Defendants collaboratively and collusively established self-controlled entities and fraudulently misrepresented and concealed their full control of such entities from state and federal government regulators, which entities were falsely declared as unrelated entities\vendors, which entities were then used to syphon federal funds domestically and internationally from QHPNY, which federal funds were repeatedly procured by QHPNY, on such

misrepresentations and which funds were meant for providing health care services to 5000+ mostly frail and elderly members of QHPNY.

111. Upon information and belief, Defendants engaged in such deceptive and improper activity knowingly at the expense of endangering health, and care, life and safety of such 5000+ frail and elderly members.

112. Upon information and belief Defendants modus operandi at QHPNY was to collusively establish and operate such enterprises along with co-conspirators, friends/employees relatives used as proxies, who then aided and abetted each other to misrepresent and conceal ownership of such entities with intent to defraud federal and state regulators and claim such fully controlled entities as unrelated entities and vendors so that these entities could phantom bill QHPNY to syphon federal funds for Defendants, knowingly creating vacuum of funds to cover health services for its 5000+ members.

113. Upon information and belief, by expensing QHPNY income, Defendants also undercapitalized QHPNY, there by killing two birds with one stone.

114. Upon information and belief, Defendants used such entities, inter alia to collusively create intercompany contracts which were then used for phantom billing and invoicing QHPNY in various ways to syphon federal funds for personal gains and benefits, from QHPNY to such entities from where funds were distributed and or kickbacks were managed by Defendants with some funds recycled into QHPNY as loans from such companies or from QHP etc., creating false debts for QHPNY.

115. Upon information and belief, such intercompany contracts between such claimed vendors entities were signed under some employee names so that the identity of Defendants as related owners, controllers and operators of all related but claimed unrelated entities could be concealed.

116. Upon information and belief, this was done to continuously keep QHPNY undercapitalized so that if Defendants' violations get caught or exposed and if QHPNY is dissolved, as their previous entity Quality Health Plans, Inc., then Defendants will startup again under different entity and continue other ventures with such federal syphoned funds available to them from such concealed entities.

117. See previous entity, https://health.wusf.usf.edu/post/ex-pres-medicare-plan-arrested#stream/0

118. In fact, when Plaintiff raised concerns with Haider, Plaintiff was told "not to go there" stating this is being done to diversify Defendants' investments in QHPNY with its federal funds, to secure Defendants' future from funds that then will be available to Defendants later under such concealed entities.

119. Upon information and belief, Defendants had hands in all pockets and were manipulatively making and effecting decisions at QHPNY for the benefit of such misrepresented fully controlled entities, to the detriment of QHPNY and most importantly to the detriment of the health and health care of 5000+ frail and elderly members, as Defendants improper and deceptive practices collectively were knowingly resulting in member claims not being paid.

120. Upon information and belief Providers began refusing and denying critical health care and relative services to frail and elderly members. Member were even left without providers as providers had

begun pulling out of QHPNY plans and were believed to be advising frail and elderly members to go find some other provider who will accept QHPNY as they will not.

121. Upon information and belief, Defendants were consensually and conspiringly aided and abetted by QHPNY Chairman Dr. Arain Nawaz and QHPNY employee/owner relative/claims controller and adjudicator at QHPNY Azima Bano, who were used as and acted as the proxy owner(s) of misrepresented entities like DMC, and other QHPNY claimed vendors HCT, Medly, Ultimed MCAIPA, Kappa, SNS Consulting, etc.,.

122. Upon information and belief at all relevant times between 2015 and 2018, Defendants individually, collaboratively and collectively controlled every operation of and had the power to close, shut down, and/or sell QHPNY, QHP, DMC, and other QHPNY claimed vendors HCT, Medly, Ultimed MCAIPA, Kappa, SNS Consulting, under main and supreme control of Haider Ali Khan.

123. Upon information and belief, such entities were then covertly fully run, controlled and operated by Defendants strategically placed in the entire conspiracy, under Haider, with CFO Richard Clark consensually aiding the other Defendants in such syphoning with financial and HR misrepresentations, manipulations, misappropriations, fraudulent concealments, assets and HR comingling, misreporting and allowing phantom invoicing and billing to pass through for transfer of federal funds in hundreds and thousands from QHPNY to DMC and other entities.

124. Upon information and belief, QHPNY under Defendants control and in collusion with Defendants, was itself also covertly providing  staged health care services to its own members in such illicit undeclared collaboration with such self-established entities and concealed billing its own self for such services and thus not only controlled and caused payments for such services but fully billing, invoicing from such entities to QHPNY thus controlling financials and reporting in QHPNY and in all such entities.

125. Upon information and belief, all these concealed related entities were then  collaboratively run by defendants under umbrella of DMC aided and abetted by CFO Richard Clark who repeatedly misrepresented, fraudulently concealed such material conflict of interests and fraudulently concealed QHPNY's full operational control over DMC and these claimed unrelated vendor entities in bids every year and year after year to federal and state government to maintain and retain such contracts and to continue procuring more federal funds while consensually aiding and abetting all the other defendants in perpetuating their violations of rules, laws and regulation, keeping QHPNY undercapitalized, under employed.

126. Upon information and belief, such activities and actions and humungous vacuum of federal funds created at QHPNY intentionally created by the Defendants with corrupt intent and for their own personal gains, knowingly resulted in member/provider claims being intentionally ignored, not being paid, or delayed by QHPNY under Defendants' control.

127. Upon information and belief claims received were intentionally not even being entered into the systems for processing and adjudication, as a result, member/claims were not only knowingly not being paid and or delayed for months without cause, but member data, database, and claims were

being further manipulated and breached and misused via Defendants covert undeclared operations in India where Plaintiff believed upcoding and bulk coding was being effected for the Defendants for encounter submissions to CMS to increase risk analysis scores to procure increased federal funds, while CFO Richard Clark at QHPNY under Haider, Safia, Sabiha, Nazeer, Nawaz, and Bano, collaboratively continued taking care of phantom billing and invoicing hundreds of thousands at QHPNY for the Defendants and majorly for DMC and under the fabricated umbrella of DMC, under which DMC phantom billed QHPNY for itself and other QHPNY claimed vendors HCT, Medly, Ultimed MCAIPA, Kappa, SNS Consulting, misrepresenting itself as some MSO (Management Services Organization)

128. Upon information and belief, and as stated previously Defendants such collective, collaborative and collusive acts in willful violations of rules, laws and regulations, and waste and abuse policies, knowingly endangered health, and care, life and safety of QHPNY's 5000+ frail and elderly members.

129. Upon information and belief, due to self-created vacuum of federal funds for personal benefits, gains and greed, Defendants perpetuated their unlawful acts further and began intentionally avoiding member claims grievances calls and directed such calls to unmonitored voice mailbox or claim buckets that was intentionally ignored by Defendants with aid of Bano to such an extent that such intentionally ignored claim grievances from 5000+ frail and elderly members/providers surpassed 18000+, which 18000+ grievances lay pending, suppressed and intentionally ignored, while Defendants utilized such federal funds in their other fully controlled operated and run entities named herein above.

130. Upon information and belief, as a result, providers began refusing health services and treatment to such frail and elderly members, who began reaching out to nearly all Departments of QHPNY (that had become non-existent at QHPNY due to intentional underemployment and under capitalization) including to Plaintiff not knowing that QHPNY had programmed all such departmental phone systems going to the same customer service department manned by only 3 customer service representatives at the time for servicing  5000+ members and about 1000 calls a day.

131. Upon information and belief, the customer service representatives,  for the few calls they picked up, did not know what to tell the members as most of them including their supervisor and including Plaintiff were told not provide proper and full information to the members and providers on their claims and to deny and or not to accept that their claims were received by QHPNY, although the majority of the rest of such claims grievances calls were still intentionally either unanswered and or directed to unmonitored and ignored mail boxes.

132. Plaintiff received some very disturbing sobbing calls from desperate frail and elderly members wanting to know where are their claims and why were they not being paid informing Plaintiff that their health or their loved one's health was fast deteriorating but they are being denied urgently needed and critical maintenance health care and services to themselves or to their frail and elderly relatives to the further detriment of their health, from providers who stated they were not being

paid by QHPNY for services provided as far back as 6 months to years and are pulling out of QHPNY Medicare plans.

133. Plaintiff believed in good faith that Defendants violations were criminal and inhumane, and got alarmed as Defendants' with their actions and inactions combined were now knowingly ignoring and not attending to critical health needs of 5000+ mostly frail and elderly members whose health was now being ignored by providers directly due to Defendants intentional improper practices, actions and inactions for their own personal gains, there by knowingly not only endangering health and care of QHPNY's 5000+ mostly frail and elderly members but also endangering their life, safety with their personal and PHI data breaches that Plaintiff brought to the attention of the Defendants but Defendants refused to declare or even rectify.

134. Upon information and belief these innocent frail and elderly members were not only being refused attention to their critical health, care and services but were even being denied their rights to approach their regular providers now also as those providers were fed up of QHPNY practices involving non-payments for health care provided.

135. Upon information and belief, innocent frail and elderly members whose health Defendants knowingly endangered, which members who needed critical and maintenance care, had no provider, could not go back to their provider and furthermore had no way even to get their grievances diligently heard by anybody at QHPNY.

136. Upon information and belief, at QHPNY at all relevant times the Defendants were fully aware of and full knowledge of the facts that such unattended claims grievances received and ignored had surpassed 18000+ and pending, but intentionally kept ignoring and manipulated that information not disclosing 18000+ pending claim grievances.

137. Upon information and belief, in 2018 and during federal and state audits, Defendants collusively and collaboratively kept defiantly repeating their pattern of deceptive practices, misrepresentations and concealments to the state and federal auditors and investigators once again knowingly misrepresenting its fully controlled, operated and run entities as unrelated vendors provided false certifications and verifications denying existence of conflict of interests and manipulated HR records and financials, and engaged in, assets and HR, employee and employment comingling and records manipulations via CFO/HR Manager Richard Clark  with intent to deceive and defraud state and federal auditors and investigators, but now Defendants inter alia used ridicule, coercion, harassment, threats attempting to force Plaintiff to collude with the defendants do the same and act as a front for Defendants to cover for their wrong doings, violations and to lie, mislead, misrepresent, fraudulently conceal,  such violations, their covert international operations in India with such federal funds, false fraudulent and misleading advertisements to members via such concealed entities, data breaches and more on their behalf, from the State and federal government agencies, auditors and investigators.

138. Upon information and belief, Plaintiff and other employees were even forced by CFO Clark, Compliance Director Sabiha Khan and VP Safia Khan to forge documents on false pretenses for audit

purposes and upon information and belief such documents were also forged by all Defendants including by Chairman Nawaz, with intent to deceive the regulators and auditors, so that inter alia such federal contracts obtained by misrepresentations could be re-procured and or maintained, and or retained and Defendants could continue with their habitual improprieties and deceptive and unlawful practice and continue syphoning funds and continue defrauding state and federal regulators at the expense of knowingly endangering health, health care , privacy and safety of 5000+ frail and elderly members.

139. On or about July 17, 2018, Plaintiff raised concerns reported in writing to his supervisor Dr. Olsen, numerous intentional serious and mostly  repetitive violations of both federal and state rules, law and regulations, waste and abuse, fraud, misrepresentations, including but not limited to fraudulent concealment, data breaches, database manipulations, HIPAA violations, and labor laws violations that Plaintiff believed were collectively and knowingly done with corrupt intent of defrauding state and federal governments while knowingly endangering health and care, and privacy and safety of 5000+ members, and covertly breaching their contracts, avoiding claims payments  and breaching, violating and misusing and allowing misuse of members' personal information and PHI (Patient Health Information) **(See July 17, 2018 Email attached as Exhibit A).**

140. After numerous complaints made vocally, in the July 17th Email, Plaintiff confirmed that he had made prior complaints of federal and state rules, law and regulations, waste and abuse, fraud, misrepresentations and compliance violations including complaints on labor laws violations and had also complained of ongoing retaliation for raising those complaints, and stating"

"Dr, Olsen, I have been asked to report to you from now on, which I believe is a good thing for QHPNY. But that cannot be said for our compliance and our compliance director Sabiha Khan aka Nagamia.  There are major compliance issue that I believe were aggravated with Sabiha Khan becoming the compliance officer. I hope you can talk it out with Dr. H Khan about it as no one listens to me as Manager MIS, and the Khan family gets upsets with me and shuts me off, threatens, harasses ridicules or outright retaliates if I report or bring compliance issues/violations to them.  Lately Safia Khan our Sr. Exec. VP has been retaliating herself and now thru Richard Clark and her sister our Compliance director Sabiha Khan aka Nagamia for serious non-compliance issues that were are being reported by me.  All I'm trying to do is good for the company letting them know what they are doing I believe is not correct and or outright compliance violation and or illegal."

"Lately I'm told I'm not to act a detective when I followed all policies as directed by HR/Richard to report two employees for major violations involving compliance violation, violation of QHPNY policies and HIPAA and PHI violations.  I'm told if I see non-compliance, I

need to bring it only to Safia Khan's attention and not to involve our HR, against all policies. And I'm not informed as to what as done about it. But then Sabiha Khan aka Nagamia comes along and ridicules me in front of the company employees demanding explanation and logs from me as to HR intervention and what was done about the non-compliance violations reported."

Then again per policy we in MIS are required…. **(See July 17, 2018 Email attached as Exhibit A)**

141.  In the July 17th Email, Plaintiff complained further of retaliation and stated:

"I had approached Dr. HK with the entire public documentation of last DFS audit report and had offered to correct them at least where MIS was concerned but was retaliated upon by Safia and Dr H Khan by bringing Juan Ley over me as the associated Director MIS blocking and denying my promotion to the position of Director MIS as was promised during my hire, just because I brought up some major issues/violations."

142.  in the July 17th Email, Plaintiff reported numerous violations under FCA act, including misrepresentations, fraudulent concealment and omissions, stating:

"To begin with I believe one of the major compliance issue now facing QHPNY is the fact itself that Sabiha Khan aka Nagamia as a family and part owner of the company has taken over compliance officer at QHPNY while stating that Safia Khan cannot be a compliance officer for the same or similar reasons.
I believe per CMS and other agency requirements Khan family member or any owner (active or passive) cannot be in compliance dept., be a compliance officer and or control or dictate compliance dept.
I believe per CMS and other agencies requirements Khan family member or any owner cannot have access to compliance hotline, mailbox or the confidential drop box.
I believe per CMS and other agencies requirements changing names first name or last name or maiden name to married name is not a problem or an issue as long as it is not done with an intent to mislead, omit and or deceive and or misrepresent. Intent is the keyword here for the authorities.
Lastly, I believe per DFS and CMS and other agencies requirements and previous violations listed no member of a family can have hands in all four pockets without declaring them as affiliates rather than misrepresenting them as "vendors" or "delegated entities" or "contractors". There are very specific guidelines and requirements as stated by state and federal agencies for such entities and even by IRS and I believe QHPNY has already been warned on such violation previously by DFS."

143. in the July 17th Email, Plaintiff reported another compliance violation that QHPNY concealed in violation of the False Claims Act:

"Lately I have found another major compliance/policy/HIPAA/PHI violation that now has also taken a shpe of another major data breach. But nothing is being done about it as I believe the QHPNY compliance director Sabiha Khan who is now using her married name Nagamia only with intent to conceal her identity and ownership in companies, herself is involved in.  I believe this breach was knowingly initiated and propagated behind my/MIS's back deliberately for obvious reasons by Sabiha Khan via her employee at Delta, which I believe violated every compliance policy HIPAA and PHI and data breach and Sabiha Khan is on the forefront of this violation, while Safia Khan was made aware of it but nothing has been done about it.  Please keep in mind CMS, DFS and probably NY State itself requires such data breach to be reported by the Management and or MIS which I believe is now you as CEO and my immediate boss to whom I am supposed to report. It has not become another major issue for MIS all over again."

144. in the July 17th Email, Plaintiff reported further conduct on behalf of QHPNY and its executives to mislead and misrepresent state and federal agencies:

"I believe Sabiha Khan/Nagamia as representative of Delta and or Ultimed has set up a private server somewhere in Florida and had one of her Delta employee breach QHPNY network, without QHPNY MIS's knowledge and or authorization, who logged into a user's computer, roamed around our QHPNY network and database and set up and configured the deliberate breach thru which every medical record of every QHPNY member I found was being transferred to our now compliance director Sabiha Khan aka Nagamiaon her private server either in the name of Delta or Ultimed or some other company.  There is much more to this kind of activity but no one in the Khan family wants to hear about it from me, and it has now become a serious MIS concern when I found QHPNY data was/is being manipulated behind MIS's back without QHPNY MIS knowledge and or authorization by none other than our own compliance officer Ms. Sabiha Khan/Nagamia. This is not good for QHPNY. I believe QHPNY management should not be digging the same hold deeper and expect to get different results. Rather than not indulging in such violation and improper/illegal activity causing major data breach involving all members of QHPNY and or taking swift action to stop the breach, QHPNY now goes and hires Sabiha Khan as the compliance director now being stated as Sabiha Nagamia with an intent to mislead, misrepresent and or to outright deceive QHPNY employees/members, CMS and all the concerned state and federal agencies and further suppress such data breach by retaliation upon MIS.  It was amazingly surprising as Ms. Sabiha Khan aka Sabiha Nagamia already has a prior arrest record which I believe also disqualifies her to act as the

compliance officer under any HMO not just QHPNY but still continues attempting to deceive all concerned state and federal agencies including CMS and DFS. And Sabiha has been using her maiden name throughout her marriage earlier.  In fact we have now multiple accounts in our systems some as Sabiha Khan and now as Sabiha Nagamia the compliance director. But the Khan family expects me/MIS to lie to the CMS and or DFS if any such issues come up during any audit interview.  What are we supposed to do at MIS, if we show concern Dr. H Khan, Safia Khan and our compliance officer do not want hear anything or do anything."

145. in the July 17th Email, Plaintiff further complained about non-disclosure of data breaches of which QHPNY executives were aware of and involved in:

"There are multiple data breaches at QHPNY that have come to light especially the data breaches of QHPNY being perpetrated at the back end in India.  But our Operating officer and senior executive vice president Safia Khan or our compliance director Sabia Khan aka Nagamia do not want to do anything about it other than retaliating against me/MIS.  The entire Khan family has been aware of the breaches via India but do not even want to disclose to CMS or DFS or to any concerned state or federal agencies that QHPNY data and data base is being manipulated in and via India and have tried to coerce, intimidate, harass and threaten me and other employees at QHPNY not to mention India to any concerned state and federal agencies."

"Although the Khan family including our Sr. Exec. VP Safia Khan and our Compliance Director are fully apprised of the breaches and the improper and or illegal activity and have been fully aware of QHPNY data and database being manipulated and breached in India, which member data is then also being used in USA by some of the other companies who I believe are involved in fraudulently advertising their service to the innocent members (against member contracts and QHPNY policies) by misrepresenting QHPNY and using its board of directors' names on mailings mailed to all members, which might now also be considered mail fraud.  One such mailing MIS/I found was done under Dr. Bonnano's name.  There are numerous other such activities that are gross violations where I have found that I as the manager MIS is just being used as a front while data manipulation is being done by the Khan family including both the Khan sisters at the back end under the umbrella of QHPNY MIS and Manager MIS."

146. in the July 17th Email, Plaintiff further complained to QHPNY regarding its improper conduct involving "vendors":

"Now the Khan family is using a company named Ultimed (an affiliate that QHPNY MIS is being intimidated coerced and threated to deliberately misrepresent as a vendor/delegated entity) and as usual comingling QHPNY assets, employees and premises, member data/phi and QHPNY database

accesses in direct violation and conflict of interests is in progress.  While MIS is expected to keep shut and not report any violation or is retaliated upon by the Khan sisters.  I found the company domain name is owned by none other than our compliance officer Ms. Sabiha Khan aka Nagamia.  All such so called delegated entities/vendors etc. named MCA, House Call Telemed, Kappa, Medly care, are controlled by none other than by Dr Haider Khan and the Khan sisters our compliance officer and our Sr. Exec. VP, that I believe are manipulating both finance and HR and channeling QHPNY income/funds via Safia Khan, Sabiha Khan aka Nagamia and Mr. Richard Clark CFO/HR at QHPNY and showing it as vendor expense for its own affiliates MCA, House Call Telemed, Kappa, Medly care etc with some running under the umbrella of DMC that is being misrepresented as vendor/delegated entity for QHPNY against DFS and or CMS regulations and QHPNY MIS is being used as the front for all such activities and violations and I as manager MIS is retaliated upon for questioning any of the aboved named and or showing concern and or reporting HIPAA/PHI, compliance violations, fraud, data breach which might now also including violations of waste and abuse.  But I believe Dr. Olsen you are aware of most of it but no corrective action have been taken yet by our Sr. Exec VP Safia Khan and or our compliance director Sabiha Khan aka Nagamia."

"Dr. Olsen I regretfully inform you that no employee at QHPNY finds itself in any position to report any compliance violation, issue and or waste and abuse to QHPNY compliance department when it is being headed by Sabiha Khan as  Nagamia. And no member reported violation compliance or otherwise will/would get thru or taken care of as long as Sabiha Khan or Sabiha Nagamia heads the compliance department at QHPNY. And this itself has now snowballed as the major concern for not just MIS but for every employee in the company and as MIS Manager I believe is one of the major deliberate violation perpetrated by QHPNY and initiated by none other than our own compliance director Sabiha Khan aka Nagamia, and that falls under the specific category of violation committed by QHPNY management knowingly and deliberately as does the data breach for not only not reporting such violations to the concerned authorities but instead persistently continuing allowing of such activity time and again. And I regretfully inform you that Mr. Richard Clark as CFO/Controller and HR Director is fully aware of the above but is as usual knowingly and or deliberately aiding and abetting the Khan family and more so the Khan sisters in all such activities. Mr Richard Clark is also involved in aiding and abetting the Khan family in retaliations against me and other employees."

"So I recommend if you get a chance talk to whoever you see fit on the board of QHPNY to make them understand that there is a right way of doing things and a wrong way and, a fine line but a very clear line for State and federal agencies and authorities defining that includes going after the "intent". I've reported to Richard as HR but Richard /CFO/HR who I believe is manipulating not just Finance but HR records also for the entire Khan family, instead aided and abetted the Khan sisters Safia and Sabiha Khan/nagamia and the entire Khan family to retaliate against me. Richard Clark I believe is now running QHPNY finance and HR departments of QHPNY as a proxy for Safia and Sabiha

Khan/Nagamia, who are now using him as a front under HR also to manipulate employee records and retaliate and harass and threaten me and any other employee they so choose, and now even more so when Sabiha Khan/Nagamia is now using Richard as her tool and proxy under the umbrella of so called compliance to threaten or harass employees. Dr. Olsen I did request Richard Clark CFO/HR to stop such retaliation as I believe you also are aware that ignorance is not a defense and knowingly aiding abetting might be a violation at a minimum but more so considered a felony at the max end."

147. in the July 17th Email, Plaintiff further complained to QHPNY regarding its pattern and habitual improper conduct that had got the Defendants previous company QHP Inc. forcibly dissolved by state and or federal regulating agencies for similar violations and non-payment of claims acknowledging and rendering the instability and violations then caused, a risk causing danger to public health and care and Defendants' then entity was fined by state and federal regulating agencies nearly $600000 and finally forced dissolved and closed and Defendants Dr. Haider Khan, Sabiha Khan aka Nagamia and Dr. Nazeer Khan were arrested and so was their CFO then, but now are knowingly repeating such violations in a major way. Plaintiff complaints:

"Safia Khan and, Sabiha Khan I believe are leading QHPNY to the same hole it originated from and have made major violations a joke but at employees' expense. But I cannot let such activity continue under my watch as the manager MIS. Per State and federal requirements I as the manger MIS so are you as the CEO of QHPNY are supposed to report this kind of activity and data breach but I don't want to be threatened, harassed, ridiculed and or retaliated upon as am already being retaliated upon by the entire Khan family for reporting some major violations and issues previously, which has taken a toll on my health and my family, so Dr. Olsen I would rather report these to you in a good faith attempt, as my boss and the CEO of the company and once again appeal to you to take corrective actions and put a stop to all such activities, violations and retaliation. It is advisable that you as the CEO put a stop to all such activities and or to report the violations as is to the concerned state and federal agencies and then take immediate corrective actions rather than conceal them as the Khan family and Richard Clark have been doing with intent of deception."

"Even after being told that you Dr. Olsen is my boss and I'm to report to you I'm getting non-compliant and improper orders from Safia Khan and Sabiha Khan with Dr. HK butting in with orders telling me to do as told to you by Executives and Compliance Officer (which is basically Safia Khan and Sabiha Khan), who I believe themselves are either initiators, triggers or knowingly and deliberately outright involved in non-compliance activity, waste and abuse, knowing and deliberate violations of PnPs, HIPAA and PHI and various other serious violations which might include but are not limited to:

1. Compliance violations
2. Waste and abuse
3. Labor laws violations
4. Fraudulent Misrepresentation
5. False advertisements
6. Data Breaches
7. Discrimination
8. Illegal or improper activities
9. Coercion of employees into illegal activity with intent to deceive governmental agencies
10. Retaliation and abuse of employees
11. Data, database, finance and HR manipulation
12. Employee harassment
13. Expensing affiliates and its employees as vendors/delegated entities/private contractors and or consultants channeling QHPNY funds to its affiliates and its employees while deliberately running QHPNY underemployed."

148. in the July 17th Email, Plaintiff further complained to QHPNY regarding its labor violations and relative fraudulent activities:

"Dr. Olsen, I believe MIS dept. and I at QHPNY are being coerced, harassed, abused, discriminated threatened and intimidated by Safia Khan Sr. Exec VP/operating officer and owner, Sabiha Khan aka Nagamia our compliance Officer and owner, Dr. Haider Ali Khan (QHPNY MIS Director, Owner, coach and outright controller of QHPNY and its other affiliates being misrepresented as Vendors/delegated entities/contractors, and Mr. Richard Clark CFO/HR."

"Mr. Richard Clark in fact has deliberately denied me and QHPNY employees the opportunity to enroll in Health benefits plans by refusing to offer such benefits to all employees of QHPNY during open enrollment period for two straight years under the leadership of Safia Khan, which might be considered improper and non-compliance at minimum and outright illegal and fraud at max."

"As stated herein above, Mr. Richard CFO and HR I believe has been manipulating HR records and harassing MIS and other employees for Safia Khan and or Sabiha Khan and I believe is outright aiding and abetting the Safia Khan, Sabiha Khan and Dr. Haider Khan in manipulating QHPNY finance for the Khan family aiding and abetting them in channeling QHPNY funds to their fully controlled affiliates including but not limited to MCAIPA, House Call Telemed, Kappa, Medly Care, Ultimed under the umbrella of DMC or otherwise, and might be fraudulently involved in aiding and abetting Safia Khan, Sabiha Khan aka Nagamia and Dr. Haider Khan to illegally misrepresent such Khan family controlled affiliates as vendors/delegated entities/ contractors/MSO chanelling QHPNY funds for them."

"The current compliance audit went downhill from the moment Safia Khan, Sabiha Khan and Richard collaboratively coerced and forced employees to forge compliance tests backdating them for CMS audit. Now which part of this and retroactive penalties don't anyone understand after claiming 15+ years of experience."

"Like I said QHPNY under Safia Khan and Sabiha Khan aka Nagamia failed the CMS program audit even before the audit began, when they along with Richard Clark our CFO/HR forced, coerced, intimidated employees and demanded from employees to forge compliance tests with by back dating their compliance tests and sign with false dates for two years and they knowingly did not declare with intent to deceive the employees, members and CMS auditors, that Sabiha Khan aka Nagamia is one of the owners of QHPNY that might also have hands in both DMC's and now Ultimed's pockets, which are affiliates misrepresented as vendors and or delegated entities to channel QHPNY funds there at the expense of QHPNY which is now severely but deliberately under employed."

"I believe QHPNY is facing major compliance violations and other serious violations not because of MIS or other QHPNY employees but because of Khan family itself. As there are no employees or departments left in QHPNY. Money I believe as stated earlier is being syphoned to other affiliates misrepresented as vendors and so called delegated entities like Delta, MCA, HCT, Medly, Kappa and now Ultimed by and for Khan family's personal gains, while QHPNY is deliberately being underemployed and its employees are either being coerced abused harassed or forced to do multiple peoples jobs at QHPNY. Employee turnover is over 300%. There is no UM dept. left at QHPNY. People are frantically employed at the time of annual enrollment period or at the time of any audit but then employees are fired on excuses or to avoid benefits as soon as the aep or an audit is over and those left are harassed or abused to over work and do 3 to 5 other peoples job. All this is nothing new you are aware of this so how can the Khan family now ridicule and point fingers at MIS or other employees for their own doings. Do they really still believe the governmental monitoring agencies are that stupid."

149. in the July 17th Email, Plaintiff further complained to QHPNY regarding Alter Egos and relative fraud:

"Now the Khan family is using a company name Ultimed (an affiliate that QHPNY MIS is being intimidated coerced and threatened to deliberately misrepresent as a vendor/delegated entity) and as usual comingling QHPNY assets, employees and premises, member data/phi and Qhpny database accesses in direct violation and conflict of interests is in progress. While MIS is expected to keep shut and not report any violation or is retaliated upon by the Khan sisters. I found the company domain name is owned by none other than our compliance officer Ms. Sabiha Khan aka Nagamia. All such so called delegated entities/vendors etc. named MCA, House Call Telemed, Kappa, Medly care, are controlled by none other than by Dr Haider Khan and the Khan sisters our compliance officer and our

22

Sr. Exec.VP, that I believe are manipulating both finance and HR and channeling QHPNY income/funds via Safia Khan, Sabiha Khan aka Nagamia and Mr. Richard Clark CFO/HR at QHPNY and showing it as vendor expense for its own affiliates MCA, House Call Telemed, Kappa, Medly care etc with some running under the umbrella of DMC that is being misrepresented as vendor/delegated entity for QHPNY against DFS and or CMS regulations and QHPNY MIS is being used as the front for all such activities and violations and I as Manager MIS is retaliated upon for questioning any of the above named and or showing concern and or reporting HIPAA/PHI, compliance violations, fraud, data breach which might also now include violations under waste and abuse. But I believe Dr. Olsen you are aware of most of it but no corrective actions have been taken yet by our Sr. Exec VP Safia Khan and or our compliance Director Sabiha Khan aka Nagamia."

"Safia Khan QHPNY Sr. Exec Vice President and or Sabiha Khan QHPNY Compliance Director and Dr. Haider Khan aka MIS Director/owner/coach and Richard Clarke refuse to declare their known involvement of India and their affiliates in India being used to manipulate QHPNY data and database and are coercing, harassing and intimidating Me/MIS not to mention India operations or its involvement in manipulating QHPNY data and database."

"In fact per Safia Khan QHPNY Sr. Exec Vice President and or Sabiha Khan QHPNY Compliance Director and Dr. Haider Khan aka MIS Director/owner/coach and Richard Clarke's orders I/MIS is persistently being coerced, harassed and intimidated to comingle users in India with QHPNY users who have been provided full unrestricted unmonitored administrative access to QHPNY servers, Data and database against all QHPNY PnPs and who are used to manipulate QHPNY data and database without QHPNY MIS/my knowledge and or authorization. Due to such improper actions by the Khan family QHPNY MIS is not in controlof QHPNY MIS as a whole and I regret to state that QHPNY MIS has no actual control on any MIS activities at QHPNY as it is being manipulatively being misrepresented by the Khan family, Safia Khan QHPNY Sr. Exec Vice President and or Sabiha Khan QHPNY Compliance Director and Dr. Haider Khan  aka MIS Director/owner/coach who are indiscriminately being aided and abetted by Mr. Richard Clark who is the CFO/Controller and HR Director. In fact MIS at QHPNY now is totally at a loss as to who in India and or in any affiliate and or in so called vendor company are the users and chave what access to what in QHPNY data and data bases as most of them comingled  and are sharing their login credentials especially in India where I believe the QHPNY data and database is being manipulated and where major data breaches are occurring, originating from and in some cases deliberately being triggered and or propagated from without MIS knowledge or control over it."

"MIS at QHPNY is ordered one day by Mr. Richard Clark CFO/HR to show DMC as a QHPNY IT relevant vendor to DFS/CMS and other concerned state and federal agencies for audit and or otherwise, then again the next day MIS gets an order from Mr. Richard Clark and the Khan Family not to show Delta

as a QHPNY vendor, misrepresenting it as some delegated entity while both QHPNY and Delta and all other affiliates shown as vendors are closely and fully controlled by none other than Dr. Haider Khan aka MIS Director/owner/coach aided and abetted by Safia Khan QHPNY Sr. Exec Vice President and or Sabiha Khan QHPNY Compliance Director and or Richard Clark CFO/HR of QHPNY."

"I as the EPOC at CMS for QHPNY is being forced, coerced and intimidated by Safia Khan QHPNY Sr. Exec Vice President and or Sabiha Khan QHPNY Compliance Director and Dr. Haider Khan to approve any comingled affiliate/vendor employees for access to QHPNY data via CMS portal no reasons given no designations given and no paper work provided nor any PnPs followed. MIS at QHPNY is being coerced and intimidated by Safia Khan QHPNY Sr. Exec Vice President and or Sabiha Khan QHPNY Compliance Director and Dr. Haider Khan to enter and show such affiliates/vendors' employees in MIS systems as QHPNY employees. Infact I as the MIS manager at QHPNY is being forced, coerced and intimidated by Safia Khan QHPNY Sr. Exec Vice President and or Sabiha Khan QHPNY Compliance Director and Dr. Haider Khan to give unrestricted unmonitored access to all QHPNY systems to any or all comingled affiliate/vendor employees for unrestricted access to QHPNY data but then again I as the MIS manager at QHPNY is being forced, coerced and intimidated by Safia Khan QHPNY Sr. Exec Vice President and or Sabiha Khan QHPNY Compliance Director and Dr. Haider Khan to take ownership of liabilities for all improper MIS activities violation its PnPs and security while these people are going behind my back and manipulating QHPNY database via their affiliates and users in india and under Delta or other shell companies in the name of diversification."

"Channeling QHPNY funds to delegated entities which are as stated fully controlled by the Khan family who I believe have hands in all pockets and manipulating QHPNY via MIS to syphon QHPNY /CMS funds to their other pockets by fully controlling manipulating QHPNY its employees, MIS activities and in fact all other QHPNY activities and departments at QHPNY for the Khan family's and its affiliates personal gains. And the above named coerce, threaten, harass, abuse intimidate and or outright retaliate if questioned. I am being forced and or coerced and or threatened and or intimidated by Dr. Haider Khan to cooperate with the above executives namely Safia Khan QHPNY Sr. Exec Vice President and or Sabiha Khan QHPNY Compliance Director and CFO/HR Richard Clarke in all their improper activities concerning MIS at QHPNY or else. I am being forced, coerced threatened and intimidated by the Khan family including our sr. Exec VP Safia Khan and our compliance director Sabiha Khan to cooperate with their undisclosed affiliates and users in India and their other affiliate employees in their improper activities giving them unrestricted access to QHPNY systems, servers and network, providing them with complete and full control of QHPNY network its systems, servers, data and database and fulfilling their all MIS access demands without questioning and or following any PnPs."

"Dr. Olsen, most of the above violations you are and have been already aware of. But I would recommend that you take immediate corrective actions and need to report to the concerned agencies as per the requirements I believe placed on MIS department and the QHPNY under the laws, regulations, non-compliance/HIPAA/PHI and or waste and abuse.  But no matter what, data breach, manipulation, compliance violation, coercion, harassment, abuse and retaliation against me and other employees need to stop immediately and immediate corrective actions are imperative. I will not allow myself or MIS to be used as a proxy and or a front for the Khan family's deliberate violations improper and or illegal  activities and will not allow myself anymore to be retaliated upon or harassed or abused or coerced by anyone anymore including Dr. H Khan, Safia Khan, Sabiha Khan or Richard Clark, whether in the name of any owner of QHPNY or its affiliates like Delta, MCA, HCT, Medly, Kappa and now Ultimed or in the name of Executives or Compliance officers, MIS director or any coach, basically the entire Khan family."

"I believe Dr. H Khan has lost clarity and gotten too emotional and harassing employees in an attempt to over protect his daughters even when they are wrong and or non-compliant and or in deliberate violations of State and Federal regulations and law's, but it cannot be allowed on employees' expense, thus I believe Dr. H Khan should stop coercing employees to lie to the concerned state and federal agencies on his or his daughters'/family's behalf and I believe under  Dr. H Khan's umbrella Ms Sabiha Khan aka Nagamia is not in a position to hold any position at QHPNY or control the compliance department in QHPNY for multiple reasons, some of them I've stated or listed above. And I believe both Safia Khan and Sabiha Khan are not in a position to manipulate HR and Finance and run MIS dept. by proxy and to coerce, harass, abuse and or retaliate against employees that are trying to point them in the right direction. I do not believe the Khan family is in a position to point fingers at MIS or other employees for QHPNY's program audit failures, because I believe it is the Khan Family (Safia Khan, Sabiha Khan aka Nagamia and Dr. Haider Ali Khan themselves are to blame as long as they deceivingly and persistently keep trying to base their success on lies, frivolous activities, deception  and deliberate compliance violations and lying to the to the  governmental entities/agencies and authorities like DFS/CMS/DOH/DOS/IRS for personal gains."

150. In addition to relaying and reporting Plaintiff's concerns and complaints to the CEO of QHPNY in the July 17, 2018 Email, Plaintiff verbally had relayed his concerns to Haider, Safia, Clark numerous times between January and July of 2018.

151. In response to Plaintiff's verbal concerns and other complaints the only action that was taken was against Plaintiff.  Plaintiff was ridiculed, harassed by Haider, Safia, Sabiha, Clark, Olsen and intimidated and coerced to keep quiet and in fact cooperate, in their illegal activities that is. Plaintiff was denied proper full lunch time or breaks.

152. In response to Sethi's July 17th Email, Plaintiff's immediate and only supervisor, Dr. Frank Oslen responded via Email on July 18, 2018, threatening and stating:

"Get this to our fucking lawyers.  I will not tolerate this shit from this little mother fucker.  I will get my Brooklyn on and send some pipe hitting bad boys to totally fuck him up.  I am not paid enough to take this crap I am a nasty retaliating mother fucker. This is it." **(See July 18, 2018 Email from Dr. Frank Olsen attached as Exhibit B).**

153. After such threatening email on Wednesday July 18, 2018 that Plaintiff received as a response to his complaint filed on Tuesday July 17, 2018:
    a. Plaintiff's access to some user systems Plaintiff supported were revoked on around Thursday July 19, 2018.
    b. Plaintiff's access code and access to the office premises thru main entrance doors was revoked on or around Friday July 20, 2018.

154. Federal and NYS officials, investigators/auditors were already on QHPNY premises investigating and auditing QHPNY practices, program and financials.

155. On or around Monday July 23, 2018 being scared of the retaliatory threats made to him that also encompassed danger to his family, and being concerned for his and his family's safety and observing retaliatory actions now already in progress and being taken against him, Plaintiff approached the NYS investigators and auditors on premises, relayed his complaints about QHPNY and provided them a copy of his July 17, 2018 email complaint and copy of the threatening email he received in response, and asked for their advice and his family's protection.

156. On July 23, 2018 on the NYS officials' advice Plaintiff filed his complaints along with filing a police complaint on threat received from CEO Olsen with NCPD (Nassau County Police Department), and submitted a copy of the police report and his complaint and additional complaint to the concerned Federal and State regulating and controlling agencies including Center of Medicaid and Medicare Services and NYS Department of Financial Services as was advised and requested of him.

157. In the additional complaint Plaintiff filed on July 23, 2018 via email with various state and federal regulating agencies Plaintiff complained of retaliation. **(See July 23, 2018 Email attached as Exhibit C).**

158. In the July 23th Email, Plaintiff further confirmed that he had made prior compliance violation complaints, labor violations also complained of ongoing retaliation for raising those complaints.

159. In the July 23th Email, Plaintiff further reported and complained regarding patient/member/provider claims not being paid and unattended claims grievance surpassing 18000+ and stated:

"As you clearly see I have been harassed, retaliated upon and threatened for my life by the management and the board and would like you to investigate and take proper action. QHNPNY is as I state being run by proxy. Board members like Dr. Nawaaz, Dr. Bonnano and Some Mr./Dr.

26

Davis are all proxies for Dr, Haider Ali Khan, Safia Khan, Sabiha Khan and Dr. Nazeer Khan and so are their proxy run affiliates like MCAIPA, House Call Telemed, Medly Care, Kappa, Virtual Health Group, Ultimed, DMC etc. that have been misrepresented to you and DFS and other governmental agencies as vendors so that monies I believe could be syphoned out of Quality Health Plans to the Khan Family's affiliates. While there are nearly 18000 claims grievances lying and knowingly unattended disregarded and or outright ignored by QHPNY under the management of Safia Khan as the Sr. Exec. Vice President, Sabiha Khan the compliance director and Dr. Haider Ali Khan.

160. In the July 23th Email, Plaintiff further complained to QHPNY regarding Labor violations and illegal acts:

"Employees are being abused harassed and coerced into forging documents back dating them for Sabiha Khan, our compliance director, Safia Khan our Sr. Exec VP and for our finance controller/CFO and HR director Mr. Richard Clark to misrepresent to CMS and or DFS in their audits."

161. In the July 23th Email, Plaintiff further complained to QHPNY regarding he personally being used as a front:

"Dr. Haider Khan calls himself as the MIS Director of QHPNY but *off* the records as the entire Khan family wants to use me/MIS as a front and proxy for their improper activities to say the least."

162. In the July 23th Email, Plaintiff further complained to QHPNY regarding PHI data and financial manipulations:

"I believe Finance and HR are and have been run by Sabiha Khan, Safia Khan and Dr. Haider Khan by proxy but a consensual proxy CFO/Controller Mr. Richard Khan whereby I believe Mr. Richard is knowingly and or deliberately aiding and abetting the Khan Family to manipulate QHPNY Finances and HR aiding them to divert QHPNY funds to Delta medical Care and other affiliates.

I believe the Khan family, the management and some of the board members if not all are, in on all the violations and incurred personal gains from such knowing and deliberate serious violations and have been manipulating QHPNY Data, database via India thru either relative/users and or via some affiliate called Bignaaz. Some users that I am aware of our Faheem Akhtar, Zubair Abbasi, Mohammad Ikram, Tasneem Akhtar, Ashraf Hussain etc. But MIS is ordered by the Khan family not to show these in the user list for CMS/DFS or for any audit purposes to any concerned governmental agency."

163. In the July 23[th] Email, Plaintiff further complained to QHPNY regarding continued harassment:

"Since I have filed a formal complaint, as nothing was being done with any of my verbal complaints, I have been continued to be harassed and now have my life threatened by the QHPNY Management and or members of the QHPNY Board of Directors.
I as the MIS manager has been harassed, ridiculed, coerced, used as a proxy retaliated upon and as you see below now have my life threatened by Dr. Olsen, CEO who states he is acting on behalf of the board members of QHPNY.
Please protect me as I am just trying to do my job right but now, I fear for my life."

164. Plaintiff was terminated on July 25, 2018.

165. Timeline between Plaintiff's protected activity and his termination in retaliation to his protected activity:

   a. After Plaintiff filed his complaints in writing to his boss CEO Olsen, of violations at QHPNY on Tuesday July 17, 2018. **(See July 17, 2018 Email attached as Exhibit A).**

   b. He was threatened by the CEO on behalf of the QHPNY board, on Wednesday July 18, 2018. **(See July 18, 2018 Email from Dr. Frank Olsen attached as Exhibit B).**

   c. His access to some user systems Plaintiff supported were revoked on around Thursday July 19, 2018.

   d. His access code and access through the office premises entrance doors was revoked on or around Friday July 20, 2018.

   e. Plaintiff approached the state and federal officials on premises on Monday 23, 2018 and per their advice filed his complaints and with state and federal regulators and also filed a police report on July 23, 2018 on their advice.

   f. QHPNY refused to investigate Plaintiff's complaint on violations.

   g. Plaintiff's replacement was hired by QHPNY on July 24, 2018.

   h. Plaintiff was terminated on July 25, 2018.

   i. At his termination Defendants Safia and Clark offered Plaintiff $20000 in return for which they wanted to gag Plaintiff against reporting or further reporting violations to anyone including state and federal regulators or providing anyone information, on violations at QHPNY.

   j. Plaintiff refused and stated retaliation is not the way to go and was escorted out by Defendant Safia.

166. Plaintiff later filed copies of his complaints with other state and federal regulators that he was provided contact for and advised to file by state and or federal officials.

**SOME VERY IMPORTANT AFFIRMATIVE MATERIAL FACTS THAT HAVE DEVELOPED AFTER PLAINTIFF'S TERMINATION, THAT PLAINTIFF BELIEVES THIS COURT SHOULD BE RIGHTFULLY APRISED OF**

167. In or around October 2018 QHPNY continued its retaliation and knowingly used fabricated false claim of insubordination against Plaintiff by Defendant Safia in collusion with Defendant Clark, that it had used for cloaking Plaintiff's retaliatory termination, and denied Plaintiff his claim for his entitled unemployment insurance benefits.

168. Plaintiff in dire need of funds to support his family, appealed and contested his wrongful denial of his unemployment insurance benefits.

169. Investigations, hearings and deposition of Defendant Safia Khan, who appeared on behalf of Plaintiff's employer, was taken and recorded under A L.J. Case No. 018-28631 by the NYS Labor Court presided by Hon. Judge Nicholas Alimaras, who by his recent order dated May 31, 2019 has given insightful declarative decision and declaratively stated, based on employer witness Safia's own testimony under oath: (See Judge Alimaras' order, Exhibit E).

**"The credible evidence establishes that the claimant was discharged for purported insubordination by failing to grant computer access to the consultant when directed to do so. However, the credible evidence fails to establish that the claimant was insubordinate. Rather, the employer witness acknowledged that the claimant granted computer access to the consult within three days of being directed to do so. Moreover, the claimant was never told that he may be fired for failing to provide more immediate access. Under such circumstances, I find that the claimant was not insubordinate as it related to granting the consultant computer access. I thus conclude that the claimant was not discharged due to misconduct. Accordingly, I conclude that the claimant lost his position under non-disqualifying circumstances."**

**"The initial determination, disqualifying the claimant from receiving benefits, effective July 26, 2018, on the basis that the claimant lost employment through misconduct in connection with that employment and holding that the wages paid to the claimant by QUALITY HEALTH PLANS OF NEW YORK INC prior to July 26, 2018 cannot be used toward the establishment of a claim for benefits, is overruled."**

**"The claimant is allowed benefits with respect to the issues decided herein."**

170. It is to be noted here that it was first revealed to Plaintiff around January 9, 2019 during such labor court hearing that it was Defendant Safia, who had claimed insubordination by Plaintiff towards herself. The false accusation as was claimed by Defendant Safia with NYS Department of Labor and with Hon. Judge Alimaras stated to the effect:

"Plaintiff was discharged/terminated on July 25, 2018 because Plaintiff was insubordinate towards VP Safia on July 24, 2018, when Plaintiff was requested by Safia to provide unrestricted access to QHPNY network to a consultant and Plaintiff refused to do so"

171. Now that Judge Nicholas Alimaras has found such accusation and charge of insubordination, used by Plaintiff's employer to cloak Plaintiff's retaliatory termination to be false per employer's witness Safia Khan's own testimony under oath, Plaintiff would like to apprise this court additional unequivocal affirmative fact that Plaintiff was not even subordinate to Safia or Clark, for any of them to even claim any such insubordination by Plaintiff against themselves, in the first place, irrelative of any request made by them or fulfilled by Plaintiff. And thus, most importantly, there never was and there never could be a question of "insubordination" by Plaintiff towards Safia or Clark to begin with, independent of the reason for such insubordination that was claimed by Safia and still was found false by Judge Alimaras.

172. Upon information and belief, after Plaintiff's complaints on July 23, 2018 with state and federal regulators, the state and federal investigators did find and confirm severe violations existed at QHPNY that involved claims not being paid and financial improprieties, and on November 8, 2018 QHPNY was sanctioned and for such violations QHPNY has been suspended/barred from enrolling and or inducing any new and or additional Medicare beneficiaries/members (business), pending further investigations. (See Federal Government communicating Sanctions to the address Exhibit D) and:

https://www.cms.gov/Medicare/Compliance-and-Audits/Part-C-and-Part-D-Compliance-and-Audits/Downloads/QHPSanction110818.pdf

173. Upon information and belief, that after Plaintiff's complaints on July 23, 2018 with state and federal regulators, QHPNY has been sued between August 2018 and February 2019 in NYS Supreme Court by multiple providers including North Well Health in February of 2019 for non-payment of claims and unjust enrichment for an amount of $21,238,321.82 claiming under Index No. 602756/2019.

"(i) Breach of Contract; (ii) breach of third party beneficiary contract, (iii) unjust enrichment, (iv) quantum meruit, and (v) accounts stated; all of these claims arise out of health services provided by Plaintiff, its hospitals, affiliates, and physicians, to insureds of Quality Health Plans of New York, Inc., **from November 18, 2013 through present and ongoing.**"

174. Upon information and belief, that the perpetrators are habitual perpetrators and show a long defiant pattern and have previously numerous times been sanctioned under same and under previous similar contracts for similar violations and in fact previous similar entity collaboratively and collusively run by the same Defendants was not only sanctioned, but fined around $600000 and forced dissolved by the state and or federal regulators. See online links below that show history of violations and sanctions:

    a. https://florida.arrests.org/Arrests/Sabiha_Khan_14400486/

    b. https://florida.arrests.org/search.php?fname=Nazeer&lname=Khan&fpartial=True

   c. https://florida.arrests.org/search.php?fname=Haider&lname=Khan&fpartial=True
   d. http://ducknetweb.blogspot.com/2012/08/two-health-insurance-executives-in.html
   e. https://health.wusf.usf.edu/post/ex-pres-medicare-plan-arrested#stream/0
   f. https://insurancenewsnet.com/oarticle/Health-Insurance-Executives-Arrested-For-Hiding-Insolvency-a-355059#.XPPGpGzsYWU
   g. https://www.bizjournals.com/tampabay/news/2012/08/22/tampa-health-care-execs-face-charges.html
   h. https://westorlandonews.com/siblings-ex-hmo-executives-arrested/
   i. http://hnfarchives.org/files/1/Image/Quality_Final%20Sanction%20Letter_05-17-10.pdf
   j. https://dfs.ny.gov/docs/insurance/exam_rpt/13691c12.pdf
   k. https://www.cms.gov/Medicare/Compliance-and-Audits/Part-C-and-Part-D-Compliance-and-Audits/Downloads/QHPSanction110818.pdf
   l. https://qhpny.com/our-2018-plans/

### FLSA and NYLL Factual Allegations

175. Consistent with their policies and patterns or practices as described herein, Defendants intentionally harmed Plaintiff, individually, as follows:

**Harsharan Plaintiff**

176. Plaintiff was employed by Defendant as Manager of MIS from on or around December 11, 2015 through July 25, 2018.

177. Plaintiff was tasked with IT systems and network related desktop and user support, maintenance, setup, troubleshooting, repair, computer cleaning, revamping, recycling, resetting, removing malicious viruses, spywares, malwares, backup and archive. making them available for use and re-use for QHPNY users. Plaintiff's primary duties and responsibilities involved providing QHPNY's staff/users with technical desktop support, ensuring that their computers could connect to the company's servers and make sure their computers were working properly in their cubicles.

178. Plaintiff did not manage anyone and Plaintiff's primary duties did not include exercise of discretion and or independent judgment with respect to any matters of significance to management or general business operations of the employer.

179. Plaintiff's primary job did not consist of: The application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software or system functional specifications; The design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications; The design, documentation, testing, creation or modification of computer programs related to machine operating systems; or A combination of the aforementioned duties, the performance of which requires the same level of skills.

180. During his employment, Plaintiff generally worked over 40 hours per week, unless he missed time for vacation, sick days, or holidays.

181. In that regard, Plaintiff worked approximately 5 days per week, 8 a.m. through 5 p.m.

182. In addition, Plaintiff was often required to work after 5:00 p.m. or to begin his work day before 8:00 a.m. and also work late nights and on weekends and remotely nearly 24/7.

183. Plaintiff was not allowed his entitled 1:30 hours for lunch, nor was he allowed any breaks, but instead was required to also work during his lunch time and made to work during lunch time also.

184. Plaintiff was put on call 24/7 and was made to work nearly 24/7 without OT and or compensation, while other employees were paid OT and compensation for working OT and on call.

185. Despite being a non-exempt employee, Defendant has failed to properly pay Plaintiff overtime compensation at 1.5 times his regular rate of pay when he worked over 40 hours per week.

186. In that regard, Plaintiff received a set salary, payable biweekly, regardless of the number of hours he worked each week.

187. Moreover, Defendant provided Plaintiff with paystubs that failed to reflect his actual hours worked and did not keep track of the number of hours worked by Plaintiff each day and week.

188. Despite regularly working over 40 hours per workweek, Defendant failed to compensate Plaintiff with proper overtime compensation of 1.5 times his regular rate of pay for all hours he was suffered or permitted to work.

189. Defendants in fact manipulated and maintained false time sheets where Plaintiff was routinely made to work long days and nights, starting before 8am – and ending after 5pm but was shown on books and to federal and state regulators that Plaintiff was just working 8am to 4pm, by CFO/HR Manager falsely clocking Plaintiff out at 4 pm, thereby even denying Plaintiff his entitled 1.5 hours of lunchtime or breaks.

190. Through his employment, Plaintiff received weekly pay stubs from Defendant that did not record and/or compensate him for all of the hours that he worked.

191. Defendant failed to provide Plaintiff with proper annual wage notices as required by the NYLL.

192. Defendant failed to provide Plaintiff with accurate wage statements as required by the NYLL.

193. Defendants failed to maintain proper work and wage records. In fact, Defendants intentionally maintained false records to harass Plaintiff and to conceal Defendants' illegal and comingled practices.

### FIRST CAUSE OF ACTION
### False Claims Act – Retaliation
### against Defendant QHPNY

194. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

195. Defendant QHPNY violated Section 3730(h) of the False Claims Act, 31 U.S.C. 3730(h).

196. In response to Plaintiff's protected activity, including numerous verbal and written complaints of to QHPNY, Defendants intentionally retaliated against Plaintiff failing to promote him, terminating his employment, and taking other egregious material and adverse employment actions against Plaintiff.

197. Such conduct by Defendant QHPNY was intentional and due to Plaintiff's protected actions.

198. Plaintiff believes and alleges that at all relevant times False Claims Act, under section 31 U.S.C. 3729 et seq. (the "False Claims Act"), section 3730(h) of the False Claims Act, was in effect and binding on Defendant QHPNY.

199. At all relevant times, Defendant were fully aware and had full knowledge of the violations reported and that Plaintiff had engaged in conduct protected by the False Claims Act.

200. Plaintiff believes and alleges thereon that he was terminated in retaliation for voicing inter alia, concerns about rules, laws and regulatory violations involving Defendant(s) which violations he also believed in good faith to be criminal violations, and which voicing by Plaintiff was mandated by QHPNY's own mandated policy.

201. Upon information and belief, Defendant QHPNY, was proactively aided and abetted in such violation by all other Defendants named in this complaint.

202. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

203. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

204. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

205. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

**SECOND CAUSE OF ACTION**
**Title 41 USC Section 4712 – Retaliation**
**against Defendant QHPNY**

33

206. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

207. Defendant violated Title 41 USC section 4712.

208. In response to Plaintiff's protected activity, including numerous verbal and written complaints of to QHPNY, Defendants intentionally retaliated against Plaintiff failing to promote him, terminating his employment, and taking other egregious material and adverse employment actions against Plaintiff.

209. Such conduct by Defendant QHPNY was intentional and due to Plaintiff's protected actions.

210. Plaintiff believes and alleges that at all relevant times Title 41 USC section 4712, was in effect and binding on Defendant QHPNY.

211. At all relevant times, Defendants were fully aware and had full knowledge of the violations reported and that Plaintiff had engaged in conduct protected by Title 41 USC section 4712.

212. Plaintiff believes and alleges thereon that he was terminated in retaliation for voicing inter alia, concerns about rules, laws and regulatory violations involving Defendant, which violations he also believed in good faith to be criminal violations, and which voicing by Plaintiff was mandated by QHPNY's own mandated policy.

213. Upon information and belief, Defendant QHPNY, was proactively aided and abetted in such violation by all other Defendants named in this complaint.

214. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

215. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

216. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

217. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

## THIRD CAUSE OF ACTION
### NYLL Section 215 – Retaliation
### against Defendant QHPNY

218. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

219. Defendants violated NYLL Section 215.

220. In response to Plaintiff's protected activity, including numerous verbal and written complaints of labor violations to QHPNY, Defendants intentionally retaliated against Plaintiff failing to promote him, terminating his employment, and taking other egregious material and adverse employment actions against Plaintiff.

221. Such conduct by Defendant QHPNY was intentional and due to Plaintiff's protected actions under NYLL section 215, for filing a complaint with his supervisor of possible labor violations at QHPNY.

222. At all relevant times, Defendants were fully aware and had full knowledge of the violations reported and that Plaintiff had engaged in conduct protected under NYLL Section 215.

223. Plaintiff believes and alleges thereon that he was framed and terminated in retaliation for voicing inter alia, concerns about labor laws violations involving Defendant, which violations he also believed in good faith to be criminal violations, and which voicing by Plaintiff was mandated by QHPNY's own mandated policy.

224. Upon information and belief, Defendant QHPNY, was proactively aided and abetted in such violation by all other Defendants named in this complaint.

225. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and  Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

226. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

227. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

228. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

## FOURTH CAUSE OF ACTION
### Retaliation under "Cat's Paw" Liability
### against Defendants QHPNY, Safia, Clark and All Other Defendants
as active collusive participants, collaborators, conspirators, aiders and abettors

229. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

230. Defendants violated laws recognized under Cat's Paw liability, terminating plaintiff's employment, and taking other egregious material and adverse employment actions against Plaintiff.

231. On July 17, 2018, Plaintiff raised concerns, reported and filed complaints with his supervisor, CEO Frank Olsen where inter alia Plaintiff brought to light and raised concerns about various violations of compliance, rules, laws and regulations, and labor violations, fraudulent activities deceptive practices perpetrated and perpetuated at QHPNY, Plaintiff also complained against Defendants VP Safia Khan and CFO/HR Manager Richard Clark for engaging and being intrinsically involved in such serious violations and for retaliation against Plaintiff for reporting such violations naming them.

232. Knowing Plaintiff filed complaints, between July 18, 2018 and July 24, 2018 Safia Khan and Richard Clark retaliated and consensually, conspiringly, collaboratively, collusively and retaliatorily fabricated false accusation and claim of insubordination against Plaintiff, falsely claiming:

"Plaintiff was insubordinate towards Safia and Clark on July 24, 2018 when on July 24, 2018 Plaintiff was ordered by Khan and Clark to provide administrative access to a consultant and Plaintiff refused to do so."

233. Plaintiff's employer QHPNY refused to investigate Plaintiff's complaints filed on July 17, and 23, 2018 but relied upon such knowingly fabricated false accusation of insubordination by Safia Khan and Richard Clark against Plaintiff that were falsely made by Safia Khan and Richard Clark, and retaliatorily terminated Plaintiff on July 25, 2018 stating insubordination as the cause of termination thereby intentionally further violating rules, laws and regulations.

234. Plaintiff never refused any such order from Defendant Safia or Clark.

235. Plaintiff was not insubordinate as collusively and falsely self-fabricated and self-claimed by Defendants Safia and Clark.

236. Thus, Plaintiff should never have been terminated per such collusively and falsely self-fabricated and self-claimed cause of insubordination.

237. Plaintiff was then denied his entitled unemployment insurance benefits by QHPNY using such knowingly fabricated false accusation and claim of insubordination against Plaintiff, by Safia Khan and Richard Clark.

238. Plaintiff rightfully appealed and contested his retaliatory and wrongful denial of his unemployment insurance benefits, and investigations and hearings were held by NYS Department of Labor and Labor Court, and depositions by VP Safia Khan was recorded under A L.J. Case No. 018-28631 by the NYS Labor Court presided by Hon. Nicholas Alimaras, who by his recent order dated May 31, 2019 has given decision, based on Plaintiff's employer's own star witness Safia Khan's own testimony given and recorded under oath in presence of Judge Nicholas Alimaras. In his decision and order, Judge Alimaras found and declaratively stated: (See Judge Alimaras' order, Exhibit E).

**"The credible evidence establishes that the claimant was discharged for purported insubordination by failing to grant computer access to the consultant when directed to do so. However, the credible evidence fails to establish that the claimant was insubordinate. Rather, the employer witness acknowledged that the claimant granted computer access to the consult within three days of being directed to do so. Moreover, the claimant was never told that he may be fired for failing to provide more immediate access. Under such circumstances, I find that the claimant was not insubordinate as it related to granting the consultant computer access. I thus conclude that the claimant was not discharged due to misconduct. Accordingly, I conclude that the claimant lost his position under non-disqualifying circumstances."**

**"The initial determination, disqualifying the claimant from receiving benefits, effective July 26, 2018, on the basis that the claimant lost employment through misconduct in connection with that employment and holding that the wages paid to the claimant by QUALITY HEALTH PLANS OF NEW YORK INC prior to July 26, 2018 cannot be used toward the establishment of a claim for benefits, is overruled."**

**"The claimant is allowed benefits with respect to the issues decided herein."**

239. At all relevant times, and at Plaintiff's termination on July 25, 2018 Defendants VP Safia Khan and CFO/HR Manager Richard Clark were fully aware of the above facts stated by Judge when they both exclusively fabricated claimed such false claim of insubordination against Plaintiff, and at all relevant times Plaintiff's employer QHPNY was required to be aware of such facts and in fact was also aware of such facts.

240. Most importantly and irrelative of above material facts, Defendants Safia Khan and Richard Clark were fully aware of and had full knowledge of the fact and now even have testified under oath to the effect that, Defendants Safia and Clark were not Plaintiff's manager or supervisor and that Plaintiff was not even subordinate to VP Safia Khan or CFO Richard Clark in any which way, shape or form for Safia or Clark to claim insubordination.

241. Per Safia's own testimony, and also per federally reported QHPNY organizational chart, Plaintiff was at the same position in chain of command at QHPNY as Safia and Clark and reported directly and exclusively to CEO Frank Olsen as his exclusive supervisor/manager as did Defendant VP Safia and CFO Clark also. Thus, there never was any question of insubordination by Plaintiff and there never could have been insubordination by Plaintiff towards VP CFO Richard Clark, no matter how QHPNY looked at such a knowingly invalid illegitimate inapplicable and false claim of insubordination by Safia Khan and or Richard Clark. (See QHPNY Organizational Chart, Exhibit F).

242. Defendants Safia and Clark were also fully aware of and had full knowledge of the fact that question of insubordination by Plaintiff as claimed, never ever arose as one cannot be insubordinate to some one that he is not subordinate to, in the first place, and at all relevant times Plaintiff's employer QHPNY was required to be aware of such facts and in fact was also aware of such facts.

243. In July of 2018, and before, during and after Plaintiff's termination on July 25, 2018 and at all relevant times, Defendants Safia and Clark were fully aware of and had full knowledge of falsity of their claim of insubordination against Plaintiff, and Plaintiff's employer not only was required to be aware of the above facts but was also fully aware of such facts, and was also aware of Plaintiff's position in QHPNY and its chain of command per its own federally reported organizational chart.

244. Defendants Safia, Clark were also fully aware of and had full knowledge of the fact that Plaintiff had not refused an order, even though Plaintiff was never required or obligated to take any order from Safia or Clark as his colleagues per company's own compliance and policies, and thus Defendants Safia, Clark were always fully aware of and had full knowledge of the fact, that insubordination as claimed by them had not occurred, did not occur and in fact could never even occur towards them by Plaintiff, but still defiantly illegitimately, falsely and retaliatorily, claimed by Plaintiff causing Plaintiff's termination.

245. Thus, Defendants Safia and Clark intentionally defiantly knowingly collusively engaged in their retaliatory animus when they fabricated such false claims against Plaintiff, and falsely claimed insubordination by Plaintiff against themselves.

246. Plaintiff's employer not only was required to be aware of but was fully aware of and had full knowledge of Defendants' such retaliatory animus.

247. Employer QHPNY adopted Defendants' unlawful animus knowingly and willfully with respect to information provided by the Defendants, and thereby afforded that biased Defendants an outsize role in its own employment decision, when it terminated Plaintiff.

248. Plaintiff believes and alleges thereon that he was framed and terminated in retaliation for voicing inter alia, concerns about rules, laws and regulatory violations involving Defendants, which violations he also believed in good faith to be criminal violations.

249. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

250. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

251. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

252. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

## FIFTH CAUSE OF ACTION
### Wrongful Termination - Intentional Violation of mandated Company Policy
### against QHPNY and All Other Defendants
as active collusive participants, collaborators, conspirators, aiders and abettors

253. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

254. Defendants violated contingent and mandated company policy.

255. On December 11, 2015, at the time of his hiring, Plaintiff was informed by QHPNY that Plaintiff's employment at QHPNY was contingent upon Plaintiff's adherence of QHPNY's mandated company policy of CODE OF BUSINESS AND ETHICS at all times during his employment at QHPNY.

256. On December 11, 2015 QHPNY mandatorily entered into an agreement with Plaintiff where, per QHPNY's own stated and mandated policy and contingency requirements for Plaintiff getting hired/employed and preserving/maintaining his employment at QHPNY, Plaintiff was mandatorily

made to agree to adherence of mandated QHPNY company policy of CODE OF BUSINESS AND ETHICS and in agreement Plaintiff was also made to mandatorily acknowledge such agreement with his signature agreeing *inter-alia,* to and stating and pledging:

"I (Plaintiff) will seek guidance from and raise concerns about possible violations of this Code with Compliance Officer or Compliance Department, my supervisor, senior management or through the QHP Hotline."

"If there are any conflicts of interest I (Plaintiff) am aware of I (Plaintiff) understand that there must be full disclosure to the Compliance Officer, or Compliance Department, my supervisor, senior management, or through QHP Hotline."

257. Thus, it was mandated company policy that required Plaintiff to mandatorily raise concerns about possible violations of this Code and make disclosures on conflicts of interests and other violations that Plaintiff became aware of, to his immediate supervisor Frank Olsen OR per policy Plaintiff faced termination for NOT complaining. As QHPNY's such mandated agreement and company policy also stated on Reporting Violations:

"If you (Plaintiff) know of or suspect a violation of applicable laws, rules or regulations, the Code, or the Company's related policies, you must immediately report that information to your supervisor, the Compliance Officer or a member of the Board of Directors. Failure to report a suspected violation of the Code is itself a violation of the Code and could subject you to disciplinary action, to and including suspension or termination in each case, in accordance with applicable laws."

258. Furthermore, QHPNY's such mandated agreement and company policy also stated as follows:

Non-Retaliation: "The Company prohibits retaliation against any employee for reporting in good faith a possible violation of this Code or of a law, rule or regulation. Retaliation for reporting a federal offense is illegal under federal law."

Investigations of Suspected Violations: "All reported violations will be promptly investigated and treated confidentially to the greatest extent possible."

259. Thus, Plaintiff was required to report and followed all mandated company policies and reported not only "possible" violations and conflicts of interests but also affirmatively known violations and conflicts of interests just as he was mandated to do by his employer itself as a contingency mandated requirement for Plaintiff to maintain, retain and preserve his job, his employment at QHPNY.

260. In fact, per company policies Plaintiff could have been terminated if he had not reported such serious violations which violations Plaintiff was personally witness to and which violations Plaintiff found were individually and collectively defrauding state and federal governments and seriously endangering 5000+ frail and elderly members, their health, health care, their personal and health information, their privacy and security.

261. At all relevant times Plaintiff fulfilled all of its obligations pursuant to the Agreement that stated mandatory QHPNY company policy.

262. Per such mandated company policy between July 17-July 24, 2018 via email Plaintiff disclosed in writing, not one but numerous serious conflicts of interests and other serious violations that Plaintiff became aware of, and seeked guidance from his immediate, direct and exclusive supervisor CEO Frank Olsen who also happened to be the CEO of QHPNY, and Plaintiff raised serious verifiable concerns about violations of company Code.

263. But employer refused to investigate and instead retaliated against Plaintiff, and wrongfully terminated Plaintiff for reporting such violations to his supervisor:

    a. Plaintiff received life threatening response from CEO Frank Olsen.

    b. QHPNY refused to investigate Plaintiff's complaints and refused to even treat such serious complaints, confidentially.

    c. Defendants were fully aware that such retaliation was illegal and federally unlawful as it itself stated in the agreement.

    d. QHPNY still defiantly retaliated against Plaintiff and retaliatorily wrongfully terminated Plaintiff on July 25, 2018 for reporting violations as was mandated of Plaintiff.

    e. And then QHPNY in collaboration with all other defendants continued and is still continuing retaliation as detailed herein above in this complaint.

264. Plaintiff believes and alleges thereon that he was terminated in retaliation for voicing inter alia, concerns about rules, laws and regulatory violations involving Defendants, which violations he also believed in good faith to be criminal violations, and which voicing by Plaintiff was mandated by QHPNY's own mandated policy.

265. Upon information and belief, Defendant QHPNY, was proactively aided and abetted in such violation by all other Defendants named.

266. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

267. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

268. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

269. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

**SIXTH CAUSE OF ACTION**
**Wrongful Termination -Illegitimate Cause claimed**
**(Legally inapplicable, non-existent cause)**
**against QHPNY, Safia, Clark and All Other Defendants**
as active collusive participants, collaborators, conspirators, aiders and abettors

270. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

271. Plaintiff was terminated on July 25, 2018 by his employer QHPNY for cause, stating, Plaintiff was terminated because Plaintiff was insubordinate towards VP Safia Khan on July 24, 2018 when on July 24, 2018 Plaintiff was ordered by Safia and Clark to provide administrative access to a consultant and Plaintiff refused to do so.

272. As detailed here in above under FOURTH Cause of Action paragraph 240-243, Plaintiff was not even subordinate in any which way, shape, form or position to Safia Khan and or Richard Clark for them to claim insubordination by Plaintiff against themselves.

273. Defendants Safia Khan and Clark in fact were not in any legal organizationally acknowledged supervisory or managerial position over Plaintiff within QHPNY, nor did they have any power and or authority over Plaintiff as Plaintiff's colleagues, to claim insubordination by Plaintiff, causing Plaintiff's retaliatory termination. (See QHPNY Organizational Chart, Exhibit F).

274. Thus, there never was any question of insubordination by Plaintiff and there never could have been insubordination by Plaintiff towards Defendants Safia and or Clark, no matter how QHPNY looked at such a knowingly invalid illegitimate inapplicable and false claim of insubordination by Safia Khan and or Richard Clark.

275. Thus, Plaintiff believes and affirmatively claims and alleges thereon that cause claimed by Plaintiff's employer even to cloak Plaintiff's retaliatory termination is/was legally invalid illegitimate and inapplicable.

276. Thus, Plaintiff believes and affirmatively claims and alleges thereon that his retaliatory termination although still is/was retaliatory, stood and stands **null and void** from the very beginning based on such legally invalid illegitimate and inapplicable cause as was claimed by Plaintiff's employer QHPNY, as the cause is/was legally non-existent.

277. Thus, Plaintiff believes and affirmatively claims and alleges thereon that his retaliatory termination unequivocally is rendered legally and technically wrongful and thus null and void independent of Plaintiff's retaliation claims under Section 3730(h) of the False Claims Act, 31 U.S.C. 3730(h), and or Title 41 USC section 4712 and or any other claims under any other cause.

278. It is well known and legally accepted material and affirmative fact that insubordination can only be claimed against a subordinate and not against a colleague or anybody else. If an individual is not a subordinate that individual cannot be insubordinate.

279. Furthermore, it is also a well-known and legally accepted material and affirmative fact that Insubordination as such is described, legally known and or affirmatively accepted as:

"a direct or indirect **refusal by an employee to perform a legal, ethical, and reasonable directive from a manager or supervisor** when the directive has been clearly understood"

280. Here VP Safia Khan and or CFO Clark per was neither Plaintiff's supervisor or manager, per Defendant Safia's own testimony under oath provide to Judge Nicholas Alimaras and recorded by NYS Department of Labor, and per QHPNY's organizational chart and thus, Plaintiff believes and affirmatively claims and alleges thereon that his retaliatory termination unequivocally is rendered invalid independent and irrelative of any cause or any debate.

281. Defendant Safia's in her own testimony under oath provide to Judge Nicholas Alimaras and recorded by NYS Department of Labor, stated that CEO Frank Olsen was plaintiff's exclusive supervisor/manager.

282. In fact, Judge Alimaras specifically asked Defendant Safia to the effect that, did Claimant (Plaintiff) report to you (Safia) and CEO Olsen both?

283. And Defendant Safia clearly stated to the effect that Plaintiff reported directly only to CEO Olsen and not to Safia.

284. Upon information and belief, copy and recording of such testimony given under oath by Defendant Safia to Judge Alimaras has been provided to Defendant's employer QHPNY and its legal representatives by NYS Department of Labor, and Defendant Safia is aware of it and in possession of such copy of her own testimony.

285. And thus, irrelative and independent of Plaintiff's retaliation claim under FCA, most importantly and in fact and affirmatively there was no legal basis for Plaintiff's termination per QHPNY's own legally inapplicable claim of insubordination towards Defendant Safia even when used by Plaintiff's employer to cloak Plaintiff's retaliatory termination. There never was and there never could be any legal basis for Plaintiff's termination, based on insubordination claimed by VP Safia Khan and NOT

by Plaintiff's supervisor/manager CEO Olsen.

286. Thus,

    a. There was no directive, legal, ethical, reasonable or otherwise from Plaintiff's direct and exclusive manager/supervisor CEO Frank Olsen that Plaintiff refused.

    b. **Neither any such claim of request, directive given to Plaintiff was ever claimed** by Plaintiff's direct and exclusive manager/supervisor CEO Frank Olsen.

    c. **Nor any claim of Plaintiff refusing any such** directive, legal, ethical, reasonable or otherwise, was ever claimed by Plaintiff's direct and exclusive manager/supervisor CEO Frank Olsen.

    d. **Most importantly neither any claim of insubordination was ever stated or claimed by** Plaintiff's direct and exclusive manager/supervisor CEO Frank Olsen against himself, as it never happened, nor did Plaintiff's employer ever made such a claim to terminate Plaintiff.

    e. And CEO Frank Olsen was also Defendants Safia and Clark's direct manager/supervisor as he was Plaintiff's.

287. Thus, any which way this court would prefer to look at this it will find that affirmatively there was no basis and there never was any basis for accusation of insubordination as claimed by VP Exec. Safia Khan and thus for QHPNY to terminate Plaintiff for such cause.

288. Thus, Plaintiff believes and affirmatively claims and alleges thereon that there is no legal or valid basis for QHPNY to have terminated Plaintiff. Which is affirmed more so after Judge Alimaras's declarative decision.

289. Plaintiff humbly requests this court to issue emergency injunction ordering Plaintiff's termination to be immediately revoked and reversed by QHPNY and that Plaintiff should be fully re-instated with full back pay and benefits pending resolution of Plaintiff's claims under FCA retaliation laws and other causes.

290. Furthermore, Plaintiff humbly requests this court to go further and declare Plaintiff's termination as retaliatory as claimed by Plaintiff in this complaint as court will agree that in absolute absence of the claimed cause of Plaintiff's termination in every shape and form, AND in presence Defendant Safia's testimony under oath given to of Hon. Judge Alimaras and in presence of Judge Nicholas Alimaras's now conclusive declarative order as detailed herein above, there is absolutely no other cause now left or could be claimed by Defendants' other than retaliation, for Plaintiff's termination that was initiated within days of his filing complaints of serious violations.

291. Plaintiff believes further litigation on such retaliatory termination will just be waste of this courts valuable but limited resources and a burden on Plaintiff with non-existent resources.

292. Plaintiff believes and alleges thereon that he was framed **but** with illegitimate cause was used even for cloaking his retaliatory termination when he was terminated in retaliation, for voicing inter alia, concerns about rules, laws and regulatory violations involving

Defendants, which violations he also believed in good faith to be criminal violations, and which voicing by Plaintiff was mandated by QHPNY's own mandated policy.

293. Upon information and belief, Defendant QHPNY, was proactively aided and abetted in such violation by all other Defendants named.

294. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and  Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

295. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

296. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

297. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

## SEVENTH CAUSE OF ACTION
### Wrongful Termination in Violation of Public Policy
### against QHPNY and All Other Defendants
as active collusive participants, collaborators, conspirators, aiders and abettors

298. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

299. Plaintiff believes and alleges that at all relevant times False Claims Act, 31 U.S.C. 3729 et seq. (the "False Claims Act"), section 3730(h) of the False Claims Act, was in effect and binding on Defendant QHPNY and also on all other Defendants in their individual, professional and corporate capacity and as aiders and abettors and as alter egos, and on CMS and DFS in their regulating and controlling capacity in furtherance of such activity. This law prohibits employers from discharging, constructively discharging, demoting, threatening harassing or in any manner discriminating or retaliating against

any employee because he or she provided information, caused information to be provided, or assisted in an investigation by a federal regulatory or law enforcement agency, or an internal investigation by the company relating to, violations of law, rule, or regulation,  fraudulent and or improper/illicit business practices, gross mismanagement and or gross waste of funds, and or abuse of authority, and or causing substantial and or specific danger to public health or safety and or constituting health care fraud.

300. Plaintiff believes and alleges that at all relevant times, Title 41 USC section 4712 against contractor reprisal was in effect and binding on Defendant QHPNY and also on all other Defendants in their individual, professional and corporate capacity and as aiders and abettors and as alter egos, and on CMS and DFS in their regulating and controlling capacity in furtherance of such activity.

301. Plaintiff believes and alleges that at all relevant times, NYLL Section 215 against retaliation was ALSO in effect and binding on Defendant QHPNY and on all other Defendants as active aiders and abettors. This law makes it unlawful for an employer, or anyone on behalf of an employer, to discharge, penalize, or in any manner discriminate or retaliate against an employee for making a complaint about a possible labor law violation an or exercising any rights that are protected under labor laws.

302. Plaintiff believes and alleges that at all relevant times, FLSA, 29 U.S.C. 201 et seq., and its supporting regulations was in effect and binding on Defendant QHPNY and on all other Defendants as active aiders and abettors and as alter egos.

303. Plaintiff believes and alleges that at all relevant times, Article 19 of the NYLL and its supporting regulations was in effect and binding on Defendant QHPNY and on all other Defendants as active aiders and abettors and as alter egos.

304. Plaintiff believes and alleges that at all relevant times, NYLL, Article 6, 195(1) and its supporting regulations was in effect and binding on Defendant QHPNY and on all other Defendants as active aiders and abettors and as alter egos.

305. Plaintiff believes and alleges that at all relevant times, NYLL, Article 6, 195(3) and its supporting regulations was in effect and binding on Defendant QHPNY and on all other Defendants as active aiders and abettors and as alter egos.

306. Plaintiff believes and alleges that at all relevant times, ERISA Laws and its supporting regulation and 29 U.S.C Section 1140, 1141 were in effect and binding on Defendant QHPNY and on all other Defendants as active aiders and abettors and as alter egos.

307. Plaintiff believes and alleges that at all relevant times, RICO Laws and its supporting regulation and 18 U.S.C. §§ 1961(1)(5), 1962(a), (b), (c) and (d) were in effect and binding on Defendant QHPNY and on all other Defendants as active aiders and abettors and as alter egos.

308. Each of the aforesaid laws is a fundamental state and or federal and thus public policy that were intentionally violated by Defendants.

309. Plaintiff believes and thereon allege that his whistleblowing, refusing to become complicit, collude, conspire, participate in illegal activity and refusing to condone illegal activity, and engaging in

protected activity, was a motivating factor in Defendant's conduct as alleged herein above, including terminating Plaintiff.

310. Defendants QHPNY was proactively aided and abetted by all other Defendants named, in their individual, professional and corporate capacity and by CMS and DFS in their regulating and controlling capacity in furtherance of such activity.

311. Plaintiff believes and alleges thereon that he was terminated in retaliation for voicing inter alia, concerns about rules, laws and regulatory violations in violation of major public policies, involving Defendants, which violations he also believed in good faith to be criminal violations, and which voicing by Plaintiff was mandated by QHPNY's own mandated policy.

312. Upon information and belief, Defendant QHPNY, was proactively aided and abetted in such violation by all other Defendants named.

313. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

314. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

315. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

316. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

## EIGTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### against QHPNY and All Other Defendants
as active collusive participants, collaborators, conspirators, aiders and abettors

317. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into

this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

318. Plaintiff and QHPNY had an agreement that Plaintiff would be able to perform the duties of relevant to information systems in accordance with federal and state regulations and commonly understood business practices, without fear of losing his job, being threatened physically and otherwise, and without having his performance evaluation downgraded and bonus reduced because he spoke up about unlawful and improper practices at QHPNY. The agreement between Plaintiff and Defendant contained an implied covenant of good faith and fair dealing, which obligated Defendant to perform the terms and conditions of the agreement fairly and in good faith and to refrain from doing any act that would deprive Plaintiff of the benefits of the agreement.

319. Plaintiff has performed all conditions, covenants and promises required on his part to be performed in accordance with the terms and conditions of the agreement.

320. Defendant QHPNY breached the implied covenant of good faith and fair dealing under the agreement by terminating Plaintiff without good cause.

321. Plaintiff believes and alleges thereon that he was framed and terminated in retaliation, for voicing inter alia, concerns about rules, laws and regulatory violations involving Defendants, which violations he also believed in good faith to be criminal violations, and which voicing by Plaintiff was mandated by QHPNY's own mandated policy.

322. Upon information and belief, Defendant QHPNY, was proactively aided and abetted in such violation by all other Defendants named.

323. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

324. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

325. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

326. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

### NINTH CAUSE OF ACTION
### Fair Labor Standards Act – Overtime Wages
### against QHPNY and Haider, Safia, Nazeer, Sabiha

327. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

328. The overtime wage provisions set forth in the FLSA, 29 U.S.C. 201 et seq., and the supporting federal regulations, apply to Defendant and protect Plaintiff.

329. Plaintiff worked in excess of 40 hours during workweeks in the relevant period.

330. Defendants intentionally, in violation of the FLSA, failed to pay plaintiff overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

331. Defendants' failure to pay plaintiff overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

332. As a result of Defendant's willful violations of the FLSA Plaintiff has suffered damages by being denied overtime compensation in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. 201 et seq.

333. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

334. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

335. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### New York Labor Law – Overtime Wages
### against QHPNY and Haider, Safia, Nazeer, Sabiha

336.  As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

337.  The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendant, and protect Plaintiff.

338.  Defendant failed to pay Plaintiff the premium overtime wages to which he was entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times his regular rate of pay – for all hours worked beyond 40 per workweek.

339.  Defendants' failure to pay plaintiff overtime compensation was willful within the meaning of New York Labor Law § 663.

340.  Due to Defendant's violations of the NYLL, Plaintiff is entitled to recover from Defendant this unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

341.  As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained and continues to sustain injuries including but not limited to economic injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

342.  Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

343.  Upon information and belief, and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

## ELEVENTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Proper Wage Notices
### against QHPNY and Haider, Safia, Nazeer, Sabiha

344.  As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

345.  Defendant has failed to supply Plaintiff with proper wage notices, as required by NYLL, Article 6, 195(1) in English or in the language identified as his primary language, at the time of hiring,

containing, among other items: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; overtime rate; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

346. Due to Defendant's violations of NYLL, Article 6, 195(1), Plaintiff is entitled to statutory penalties of fifty dollars for each workday that Defendant failed to provide him with wage notices, or a total of five thousand dollars, and reasonable attorneys' fees and costs as provided for by NYLL, Article 6, 198(1-b).

347. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

348. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

### TWELVETH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Accurate Wage Statements
### against QHPNY and Haider, Safia, Nazeer, Sabiha

349. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

350. Defendant failed to supply Plaintiff with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked; including overtime hours worked if applicable; deductions; and net wages.

351. Due to Defendant's violations of NYLL, Article 6, 195(3), Plaintiff is entitled to statutory penalties of two hundred fifty dollars for each workday that Defendant failed to provide them with accurate wage statements, or a total of five thousand dollars, and reasonable attorneys' fees and costs as provided for by NYLL, Article 6, 198(1-d).

352. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has sustained and continues to sustain injuries including but not limited to economic injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

353. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

354. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

### THIRTEENTH CAUSE OF ACTION
### Common Law Fraud – Fraudulent Termination
### against QHPNY, Safia, Clark and All Other Defendants
as active collusive participants, collaborators, conspirators, aiders and abettors

355. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

356. On July 25, 2018 QHPNY knowingly but covertly used fraudulently fabricated but knowingly legally inapplicable means to retaliatorily wrongfully terminate Plaintiff stating termination for cause, but then individually, collaboratively, collectively and collusively with other Defendants actively concealed from Plaintiff exact cause claimed for Plaintiff's abrupt termination.

357. Defendants did this with corrupt intent to;
    a. Fraudulently, deny Plaintiff an opportunity to procedurally object to his termination and to take immediate appropriate procedural to immediately put a stop to his intentionally fraudulent termination then and there itself on July 25, 2018 based on illegitimate and or legally inapplicable cause claimed for Plaintiff's termination by Plaintiff's employer.
    b. Deny Plaintiff procedural access to Plaintiff's supervisor who was also the CEO of QHPNY to attempt to rectify and reverse his termination for cause which as known now is/was legally and or procedurally inapplicable.
    c. Illicitly cloak Plaintiff's retaliatory wrongful termination.

358. On July 25, 2018, on the day and at the time of Plaintiff's termination, and thereafter and at all relevant times between July 24, 2018 and January 9, 2019 Plaintiff was intentionally kept in dark as to the exact claim used to cloak Plaintiff's retaliatory wrongful discharge on July 25, 2018.

359. On July 25, 2018, on the day and at the time of Plaintiff's termination, and thereafter and at all relevant times between July 24, 2018 and January 9, QHPNY refused to elaborate and acknowledge on its reason/cause to abruptly terminate Plaintiff and at the time of termination refused to answer any of Plaintiff's questions and concerns, but distinctly just stated Plaintiff was being terminated for cause. Thus, Plaintiff was overtly and intentionally denied information on specificity of such cause.

360. At the time of termination Plaintiff was intentionally not informed that he was being accused of insubordination towards VP Safia Khan and or CFO Richard Clark by Safia Khan and Richard Clark themselves and that Plaintiff was specifically being terminated by QHPNY using such cause of claimed accusation of insubordination by Safia Khan and or Richard Clark.

361. if Plaintiff would have known then that Plaintiff was being accused insubordination by VP Safia Khan and or CFO Clark, who were his colleagues and not his supervisor, it would have allowed Plaintiff to procedurally take immediately action and request hearing by his supervisor who was the CEO and get his termination proceedings stopped, his termination revoked, and reversed based on legally inapplicable cause claimed for Plaintiff's termination by Plaintiff's employer, irrelative and independent of the fact that it was false accusation fabricated to cloak Plaintiff's retaliatory termination.

362. On July 25, 2018, on the day and at the time of Plaintiff's termination, and thereafter and at all relevant times between July 24, 2018 and January 9, 2019 Plaintiff was unaware that on July 24, 2018 Defendants Safia Khan and Clark in collusion with Plaintiff's employer had, covertly filed knowingly false and frivolous complaint against Plaintiff without Plaintiff's knowledge, when and where it was fraudulently, falsely but covertly claimed, stated by Defendants VP Safia Khan and or CFO Richard Clark in collusion with Plaintiff's employer that,

Plaintiff was insubordinate towards VP Safia Khan on July 24, 2018, when on July 24, 2018 Plaintiff was requested by Safia Khan to provide administrative access to a consultant and Plaintiff refused to do so.

363. On July 25, 2018, on the day and at the time of Plaintiff's termination, and thereafter and at all relevant times between July 24, 2018 and January 9, 2019, it was intentionally concealed from Plaintiff that Plaintiff was being discharged because Plaintiff was insubordinate towards VP Safia Khan and or CFO Richard Clark on July 24, 2018.

364. Defendants Safi and Clark with approval of QHPNY had individually, collaboratively, collectively, conspiringly collusively and covertly claimed such false and frivolous but knowingly legally inapplicable claim against Plaintiff with corrupt intent to aide and abet each other and QHPNY to cloak Plaintiff's retaliatory termination and had then actively concealed it from Plaintiff to deny him opportunity to take immediate procedural action to get his termination stayed, revoked and reversed on legally non-existent and procedurally inapplicable grounds.

365. The affirmative unequivocal fact, as detailed herein in above in this complaint, was that:

    a.  A claim of insubordination could never be claimed by VP Safia Khan and or CFO Clark.

    b.  Safia and or Clark were not Plaintiff's manager/supervisor in any way, shape or form.

    c.  Plaintiff was not subordinate to Defendants Safia Khan and or Richard Clark but was at the same level of position in chain of command per federally reported QHPNY organizational Chart and thus the question of insubordination never could arise and or arose.

366. The above detailed frivolous and false constructively fabricated claims of insubordination by Safia Khan and Clark against Plaintiff were actively and maliciously and fraudulently concealed by the Defendants and Plaintiff's employer from Plaintiff at the time of Plaintiff's termination with intent to deny Plaintiff an opportunity to procedurally appeal and immediately take action to rectify and reverse the situation.

367. Plaintiff only became aware of such fabricated specific frivolous and false claims of insubordination by Safia Khan and or Clark on or around January 9, 2019, during Safia Khan's testimony under oath in a labor court hearing, when and where to retaliatorily and unjustly deny Plaintiff his entitled unemployment benefits Safia Khan was produced by Plaintiff's employer as a witness on its behalf and where and when VP Exec Safia Khan testified and first claimed under oath that Plaintiff was terminated/discharged because he was insubordinate towards VP Safia Khan and or CFO Clark on July 24, 2018 when he was ordered by Khan and or Clark to provide unrestricted administrative access to some consultant and Plaintiff refused to do so.

368. Based on Safia Khan's own testimony under oath it was unequivocally clear that on July 25, 2018, on the day and at the time of Plaintiff's termination, and thereafter and at all relevant times between July 24, 2018 and January 9, and before during and after Safia Khan's testimony under oath provided on or around January 9, 2019, Defendants were fully aware of and had full knowledge of following material facts that:

    a.  VP Safia Khan and CFO Clark were not Plaintiff's supervisor/manager in any which way shape or form.

    b.  Plaintiff was not subordinate to VP Exec Safia Khan and CFO Clark in position in any way, shape or form and even per QHPNY organizational chart and could never be insubordinate towards them and or cannot be charged or accused of such insubordination against VP Exec Safia Khan and CFO Clark.

369. Defendants QHPNY, Safia Khan and Richard Clark's collusive misrepresented material fact when they fabricated false accusations and claimed insubordination by Plaintiff.

370. At all relevant times Defendants QHPNY, Safia Khan and Richard Clark's were fully aware of and had full knowledge of falsity and inapplicability of such claim of insubordination and thus concealed from Plaintiff.

371. At all relevant times Defendants QHPNY, Safia Khan and Richard Clark's were fully aware of and had full knowledge of the materiality and consequences of their actions, claims and misrepresentations as they took such unlawful actions intentionally and with corrupt intent to cause Plaintiff to lose his

employment/job, and in fact did inflict harm on Plaintiff when they aided and knowingly caused Plaintiff's retaliatory termination.

372. At all relevant times Defendants QHPNY, Safia Khan and Richard Clark's unlawful actions including fraudulent concealment were perpetrated with corrupt intent to obstruct, deny Plaintiff justice and opportunity to object, appeal and get immediate procedural relief from his supervisor CEO Olsen on grounds of illegitimate inapplicable cause for termination.

373. Plaintiff was never aware of such a claim of insubordination by VP Safia Khan and CFO Richard Clark against themselves at the time of his termination and thus allowed Safia Khan to escort him out of the premises and his employment.

374. Defendants Safia Khan and Richard Clark collusively with knowledge and approval of Defendant QHPNY, covertly perpetrated a fraud, when they intentionally, collusively and fraudulently misrepresented material facts and engaged in fraudulent concealment and omission of material facts to collusively and fraudulently aid and abet QHPNY to cloak Plaintiff's retaliatory wrongful discharge by QHPNY.

375. Defendants QHPNY, Safia Khan and Richard Clark's collusive intentional fraudulent and unlawful acts and actions inflicted severe harm upon Plaintiff causing Plaintiff to be falsely accused of insubordination and causing Plaintiff's retaliatory termination under false pretense.

376. Defendants QHPNY, Safia Khan and Richard Clark's collusive fraudulent intentional acts and actions were perpetrated against Plaintiff with corrupt intent to further intentionally, covertly, collusively and defiantly violate FCA retaliation laws and other state and federal rules, laws and regulations to further egregiously harm Plaintiff and defraud state and federal regulators.

377. On July 25, 2018 and at all relevant times Defendants QHPNY, Safia Khan and Richard Clark intended to and did egregiously inflict harm on Plaintiff by intentionally, collusively and maliciously aiding and abetting and causing Plaintiff's retaliatory wrongful termination.

378. On July 25, 2018 and at all relevant times Defendants QHPNY, Safia Khan and Richard Clark collusively and actively and fraudulently denied Plaintiff information on his discharge that could have held his termination null and void and would have reversed Plaintiff's termination. And in fact, Defendants fraudulently concealed their knowingly inapplicable claim from Plaintiff causing Plaintiff's termination.

379. If not for Defendants' intentionally malicious covert fraudulent actions, Plaintiff's termination would have been halted on July 25, 2018 itself and Plaintiff procedurally would have had his entitled right to appeal to his boss CEO Frank Olsen and have his illicit termination stayed revoked and reversed on legally and procedurally inapplicable claim and grounds.

380. If not for Defendants' intentionally malicious covert fraudulent actions including fraudulent concealment, Plaintiff would still have a job today, as the very claim and basis claimed for his termination by his employer was and still is non-existent in every way shape and form.

381. Plaintiff believes and claims that his termination stood null and void in itself and on July 25, 2018 then and there itself had Defendants QHPNY, Safia Khan and Richard Clark's not engaged in misrepresentation including fraudulent concealment and omission.

382. Defendants were fully aware of their fraudulent actions and independent nullability and voidability of Plaintiff's retaliatory termination and thus intentionally and maliciously concealed such inapplicable and false reason from Plaintiff and state and federal regulators to the intentional detriment of Plaintiff, his employment, his personal and professional reputation and credibility.

383. Defendants collusively engaged in common law fraud against Plaintiff and defrauded Plaintiff out of his job and employment and thus his very mode of earning a living.

384. At the time of Plaintiff's termination Plaintiff was not aware of insubordination claimed by Safia towards herself, against Plaintiff, and for claim by Safia Plaintiff was terminated and escorted out.

385. In fact, Plaintiff was overtly denied such information when he showed concern and requested such information from Safia and Clark at and during his termination

386. Plaintiff believes and alleges thereon Defendants perpetrated a fraud on plaintiff and defrauding Plaintiff out of his job/employment by using such fraud to cloak Plaintiff's retaliatory discharge, for voicing inter alia, concerns about rules, laws and regulatory violations involving Defendants, which violations he also believed in good faith to be criminal violations, and which voicing by Plaintiff was mandated by QHPNY's own mandated policy.

387. Plaintiff believes and alleges thereon that Defendants perpetrated such fraud with corrupt intent to commit, conceal and perpetuate other fraud against state and federal government.

388. Upon information and belief, Defendant QHPNY, was proactively aided and abetted in such violation by all other Defendants named.

389. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

390. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

391. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

392. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

## FOURTEENTH CAUSE OF ACTION
### Constructive Fraud - Fraudulent Termination
### against QHPNY, Safia, Clark and All Other Defendants
as active collusive participants, collaborators, conspirators, aiders and abettors

393. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

394. On and around July 25, 2018 and at all relevant times QHPNY was in contractual and fiduciary relationship with Plaintiff and had contractual and fiduciary duties, responsibilities and obligations towards Plaintiff.

395. On and around July 25, 2018 and at all relevant times Defendants Safia and Clark were in contractual and fiduciary relationship with QHPNY and had contractual and fiduciary duties, responsibilities and obligations towards QHPNY.

396. On and around July 25, 2018 and at all relevant times Defendant Safia and Clark individually and collaboratively were fully aware and had full knowledge of the fact that QHPNY was in contractual and fiduciary relationship with Plaintiff and under the laws had contractual and or fiduciary duties, responsibilities and obligations towards Plaintiff.

397. Defendants were hired and employed by their fiduciary QHPNY and were required and duty bound to represent their fiduciary QHPNY. On and around July 25, 2018 and at all relevant times Defendants were fully aware at all times that their fiduciary QHPNY had contractual and fiduciary relationship with Plaintiff and that their fiduciary QHPNY is legally bound and required to serve the beneficiary Plaintiff. Thus, Defendants individually and collaboratively are deemed employed to further that service.

398. Defendants individually and collaboratively had fiduciary duties towards Plaintiff to whom their fiduciary QHPNY was duty bound and was legally required to serve under the NYS and federal laws.

399. Thus, Defendants individually and collaboratively had fiduciary duties, responsibilities and obligations towards Plaintiff.

400. Defendants Safia Khan and Richard Clark, used their position of trust, individually, collaboratively, collectively, collusively and fraudulently breached such fiduciary duties and took advantage of their position of trust to benefit themselves and QHPNY when they defrauded Plaintiff out of his

job/employment with their fabricated and claimed insubordination towards Safia, against Plaintiff to aid and abet QHPNY to cloak retaliation against Plaintiff and to cloak Plaintiff's retaliatory termination and for causing Plaintiff's retaliatory termination.

401. Defendants Safia and Clark with knowledge and approval of QHPNY, used their position of trust knowingly, intentionally, constructively and egregiously perpetrated fraud upon Plaintiff with malicious and corrupt intent to aid and abet each other and QHPNY in violating federal FCA retaliation laws when they fabricated and used such fraudulent claim of insubordination to intentionally cause Plaintiff's retaliatorily discharge for Plaintiff but then concealed the actual claim.

402. Defendants Safia and Clark with knowledge and approval of QHPNY individually, collaboratively, collectively, collusively and fraudulently and constructively aided and abetted each other and QHPNY in violating other federal laws while intentionally aiding and abetting and causing Plaintiff's retaliatory termination.

403. Defendants QHPNY, Safia and Clark abused their position of trust and collusively engaged in constructive fraud and defrauded Plaintiff out of his job and employment and thus his very mode of earning a living.

404. At the time of Plaintiff's termination Plaintiff was not aware of insubordination claimed by Safia towards herself, against Plaintiff, and for claim by Safia Plaintiff was terminated and escorted out.

405. In fact, Plaintiff was overtly denied such information when he showed concern and requested such information from Safia and Clark at and during his termination.

406. Plaintiff believes and alleges thereon Defendants perpetrated a fraud on plaintiff  and defrauded Plaintiff out of his job/employment by using such fraud to cloak Plaintiff's retaliatory discharge, for voicing inter alia, concerns about rules, laws and regulatory violations involving Defendants, which violations he also believed in good faith to be criminal violations, and which voicing by Plaintiff was mandated by QHPNY's own mandated policy and which voicing by Plaintiff was mandated by QHPNY's own mandated policy.

407. Plaintiff believes and alleges thereon that Defendants perpetrated such fraud with corrupt intent of committing and concealing of other fraud against state and federal government.

408. Upon information and belief, Defendant QHPNY, was proactively aided and abetted in such violation by all other Defendants named.

409. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and  Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

410. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

411. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

412. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

## FIFTEENTH CAUSE OF ACTION
### Defamation Per Se and Compelled Self-Defamation
### against All Defendants

413. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

414. On information and belief, Defendant through its agents, employees, relatives and associates made unprivileged defamatory statements about Plaintiff to numerous persons including coworkers, supervisors and prospective employers of Plaintiff. Information as to the specific identity of the persons orally and in writing publishing the relevant statements, and the recipients of the statements is in the hands of Defendant and other third parties and will be subject to discovery.

415. On information and belief, Plaintiff believes defamatory statements by Defendant and their agents were made orally. While defamatory statements may also have been made in writing, Plaintiff does not presently have information  concerning oral and written statements, which is in the hands of Defendant and of which Defendant have superior knowledge, as will be subject to discovery.

416. Plaintiff does not presently have knowledge of the exact wording of the defamatory statements at issue, other than as alleged hereinabove, such information being in the hands of Defendant and third parties. On information and belief, the general substance of these defamatory statements includes false express and implied assertions also including insinuation and innuendo that Plaintiff's performance was deficient, that he failed to perform his duties in a professional manner, that he was incompetent, that he was trying maliciously to harm Defendant, that he was a criminal, and that Plaintiff was lying to federal and state regulators.

417. Such assertions were intended as statements of fact and not opinion.

418. Plaintiff is informed and believes that Defendant, by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally caused excessive and unsolicited internal and external oral and written publications of defamation, of and concerning Plaintiff, to third persons and

the community, and/or with a failure to investigate adequately or verify purported facts underlying the defamatory statements.

419. The precise dates of these oral and written publications are not presently known to Plaintiff as the information is in the hands of Defendant. However, Plaintiff is informed and believes the publications were published and foreseeably republished between around July 2018 - March 2019, and after that date, to first cause, and then justify, Plaintiff's wrongful and illegal termination, and to cause Plaintiff to be unable to secure new employment for a considerable period of time despite reasonable efforts to do so.

420. These oral and written publications were outrageous, negligent, reckless, intentional, and maliciously published and republished by Defendant, and each of them. Plaintiff is informed and believes that the negligent, reckless, and intentional publications by Defendant, and each of them, were and continue to be, foreseeably published and republished by Defendant, their agents and employees, recipients, and in the community. Plaintiffs hereby seek damages for these publications and all foreseeable republications discovered up to the time of trial.

421. During the above-described time-frame, Defendant, including through its agents as set forth above, conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive, unsolicited and unprivileged oral and written publication of defamation, of and concerning Plaintiff, to third persons, who had no need or desire to know. Those third person(s) to whom these Defendant oral and in writing published this defamation are believed to include, but are not limited to, other family members, board members, relatives and employees of Defendant, and each of them, federal and state regulators, and the community, all of whom are known to Defendant, and each of them, but unknown at this time to Plaintiff.

422. Further, Defendant had knowledge and/or reason to believe that Plaintiff would be under a strong compulsion and pressure to disclose the contents of these defamatory false statements to third persons, namely potential employers, colleagues, friends, family and other individuals, as he in fact did.

423. The defamatory publications set forth above consisted of knowingly false and unprivileged communications, tending directly to injure Plaintiff and Plaintiff's personal, and professional reputation.

424. Plaintiff is informed, believes and fears that these false and defamatory per se statements, including statements regarding Plaintiff's occupational, professional, and personal reputation, will continue to be published by Defendant, and each of them, and will be foreseeably republished by its recipients, all to the ongoing harm and injury to Plaintiff's occupational, business, professional, and personal reputation. Plaintiff also seeks redress in this action for all foreseeable re-publications, including his own compelled self-publication of these defamatory statements.

425. The defamatory meaning of all of the above-described false and defamatory statements and their reference to Plaintiff, were understood by these above-referenced third person recipients and other members of the community who are known to Defendant, and each of them, but unknown to Plaintiff

at this time.

426. None of Defendant's defamatory publications and statements against Plaintiff referenced above is true. The above defamatory statements were understood as assertions of fact, and not as opinion. Plaintiff is informed and believes this defamation will continue to be negligently, recklessly, and intentionally published and foreseeably republished by Defendant, and each of them, and foreseeably republished by recipients of Defendant's publications, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

427. Each of these false defamatory per se oral and written publications (as set forth above) were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege (which Plaintiff denies existed), since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal and cruel actions of Defendant, to cause further damage to Plaintiff's professional and personal reputation, to cause him to be fired, to justify his firing and to destroy his credibility in the federal, state and local law enforcement community.

428. Each of these publications by Defendant, and each of them, was made with knowledge that no investigation was done and thus no investigation supported the unsubstantiated and obviously false statements. Defendant published these statements knowing them to be false, unsubstantiated by any reasonable investigation and were the product of hostile witnesses. These acts of knowingly false oral and written publication were known by Defendant, to be negligent to such a degree as to be reckless. In fact, not only did Defendant have no reasonable basis to believe these statements, but it also had no belief in the truth of these statements, and in fact knew the statements to be false. Defendant excessively, negligently, and recklessly published these statements to individuals with no need to know, and who made no inquiry, and who had a mere general or idle curiosity of this information.

429. The above complained-of oral and written publications by Defendant were made with hatred and ill will towards Plaintiff and the design and intent to injure Plaintiff, Plaintiff's good name, his reputation, employment and employability. Defendant published these statements, not with an intent to protect any interest intended to be protected by any privilege, but with negligence, recklessness and/or an intent to injure Plaintiff and destroy his reputation. Therefore, no privilege existed to protect Defendant from liability for any of these aforementioned publications or republications.

430. As a proximate result of the oral and written publication and republication of these defamatory statements, and each of them, Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage.

431. Defendant committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice (as described above), and which abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights. All actions

of Defendant, its agents and employees, herein alleged were known, ratified and approved by Defendant. Plaintiff thus is entitled to recover punitive and exemplary damages from Defendant, for these wanton, obnoxious, and despicable acts in an amount according to be determined at time of trial.

432. Plaintiff believes and alleges thereon that he was slanderously and libelously defamed, which defamation was then knowingly used to cloak Plaintiff's retaliatory termination, for voicing concerns about rules, laws and regulatory violations, which violations he believed in good faith to be criminal violations.

433. Plaintiff believes and alleges thereon that he was framed and retaliatorily terminated by QHPNY using fraudulent means and by defrauding Plaintiff, for voicing inter alia, concerns about rules, laws and regulatory violations involving Defendants, which violations he also believed in good faith to be criminal violations, and which voicing by Plaintiff was mandated by QHPNY's own mandated policy.

434. Upon information and belief, Defendant QHPNY, was proactively aided and abetted in such violation by all other Defendants named.

435. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

436. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

437. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

438. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

### SIXTEENTH CAUSE OF ACTION
### Breach of Contract
### against All Defendants

439. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

440. Between December of 2015 and July 2018, Defendants Haider, Safia, Clark in consensual, collusive, collaboration with the rest of the Defendants named herein, intimidated and coercively forced Plaintiff to work numerous hours extra for multiple business entities claimed by them as owned, by Haider Ali Khan (overtly claimed owner, controller, operator, MIS Director of QHPNY, QHP).

441. Defendants acted in their personal, individual and professional capacities under Haider when they intimidated and coercively forced Plaintiff to work such numerous hours extra for multiple business entities claimed by them as legally owned, by Haider Ali Khan.

442. These entities included but are not limited to HCT, MCAIPA, Medly, Kappa, VHG, Ultimed, which Haider was already controlling and operating.

443. These hours were separate from QHPNY regular and OT hours that Plaintiff was made to work.

444. Plaintiff was promised and it was agreed between Plaintiff and Defendants that Plaintiff would be paid two times the pay received at QHPNY for working these numerous extra hours for such multiple business entities claimed as owned, by Haider Ali Khan.

445. Plaintiff worked numerous extra hours between 2015-2018, and did work for such business entities as was intimidated and coerced by the Defendants, but the Defendants as of this day have failed to pay or compensate Plaintiff for such numerous separate extra hours worked for such entities.

446. Plaintiff followed through with his part of the contract and worked the numerous extra hours Plaintiff was intimidated and coercively forced to work for such business entities by the Defendants under agreed upon and promised payment terms but the Defendants intentionally breached the contract with Plaintiff and refused to pay Plaintiff as agreed upon for the numerous extra hours worked and laborious technical work performed for Defendants for such business entities under such agreement.

447. As a proximate result of Defendants willful breach of contract, Plaintiff has sustained and continues to sustain injuries including but not limited to economic/financial injuries, pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

448. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

449. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

## SEVENTEENTH CAUSE OF ACTION

**Common Law Fraud – Breach of Contract**
**against All Defendants**

450. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

451. Between December of 2015 and July 2018, Defendants, individually, collaboratively, collectively, collusively intimidated and coercively forced Plaintiff to work numerous hours extra for multiple business entities claimed by them as owned, by Haider Ali Khan (overtly claimed owner, controller, operator, MIS Director of QHPNY, QHP).

452. Defendants acted in their personal, individual and professional capacities and under Haider when they intimidated and coercively forced Plaintiff to work such numerous hours extra for multiple business entities claimed by them as owned, by Haider Ali Khan.

453. These entities included but are not limited to House Call Telemed, MCAIPA, Medly Care USA, Medly Care India, Ultimed, Kappa, VHG, which Haider was already controlling and operating using, with and along operational manager Rosenberg under him.

454. These hours were separate from QHPNY regular and OT hours that Plaintiff was made to work.

455. Plaintiff was promised and it was agreed between Plaintiff and Defendants that Plaintiff would be paid two times the pay received at QHPNY for working these numerous extra hours for such multiple business entities claimed by Defendants as owned by Haider Ali Khan.

456. Plaintiff relied on such claims by Defendants of ownership by Haider who was Plaintiff's manager at QHPNY, MIS Director and owner of QHPNY, worked numerous extra hours between 2015-2018, and did work for such business entities as was intimidated and coerced by the Defendants, but the Defendants as of this day have failed to pay or compensate Plaintiff for such numerous separate extra hours worked for such entities.

457. Plaintiff relied on such claims by Defendants of ownership by Haider and followed through with his part of the contract and worked the numerous extra hours Plaintiff was intimidated and coercively forced to work for such business entities by the Defendants under agreed upon and promised payment terms.

458. Plaintiff later found out that he was defrauded by Defendants with intentional dubious claims of ownership by Haider Ali Khan.

459. Between December of 2015 and July 2018, and at all relevant times Defendants used their positions and intentionally misrepresented ownership of above-named business entities with corrupt intent to take advantage of and defraud Plaintiff.

460. Defendants unjustly used their advantageous superior position over Plaintiff to misrepresent, fraudulently conceal and defraud Plaintiff.

461. Between December of 2015 and July 2018, and at all relevant times Defendants were fully aware of their fraudulent misrepresentations and falsity of their claims when they intimidatingly coerced Plaintiff to work numerous hours for such claimed ownership of such entities

462. Between December of 2015 and July 2018, and at all relevant times Defendants were fully aware of the materiality and consequences of their intentional misrepresentations when they fraudulently and coercively made Plaintiff work numerous extra hours for such business entities falsely claiming such entities that were knowingly falsely claimed by the Defendants as owned by QHPNY owner, Plaintiff's manager/supervisor, QHPNY MIS Director Haider Ali Khan.

463. Between December of 2015 and July 2018, and at all relevant times Defendants fully intended for Plaintiff to rely and act upon such misrepresentations, intimidation and coercion and work numerous laborious extra hours for such entities for the Defendants.

464. Plaintiff did rely and act upon such intimidation, coercion and misrepresentations when he worked numerous extra hours believing in such dubious claims by Defendants.

465. At the time Defendants perpetrated such fraud on Plaintiff, Plaintiff was not aware that Defendants' claims were willfully false and that Haider was not the owner of such entities that Plaintiff was intimidatingly coerced to work for.

466. Defendants intentionally inflicted injuries including but not limited to economic and emotional harm on Plaintiff to benefit themselves and QHPNY.

467. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has sustained and continues to sustain injuries including but not limited to economic/financial injuries, pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

468. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

469. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

### EIGHTEENTH CAUSE OF ACTION
### Constructive Fraud – Breach of Contract
### against All Defendants

470. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

471. Between December 2015 and July 2018 and at all relevant times QHPNY was in contractual and fiduciary relationship with Plaintiff and had contractual and fiduciary duties, responsibilities and obligations towards Plaintiff.

472. Between December 2015 and July 2018 and at all relevant times Defendants were in contractual and fiduciary relationship with QHPNY and had contractual and fiduciary duties, responsibilities and obligations towards QHPNY.

473. Between December 2015 and July 2018 and at all relevant times Defendants were fully aware and had full knowledge of the fact that QHPNY was in contractual and fiduciary relationship with Plaintiff and under the laws had contractual and or fiduciary duties, responsibilities and obligations towards Plaintiff.

474. Defendants were hired and employed by their fiduciary QHPNY and were required and duty bound to represent their fiduciary QHPNY.

475. Thus, Defendants individually and collaboratively are deemed employed to further that service.

476. Thus, Defendants had fiduciary duties, responsibilities and obligations towards Plaintiff.

477. Defendants individually and collaboratively had fiduciary duties towards Plaintiff to whom their fiduciary QHPNY was duty bound and was legally required to serve under the NYS and federal laws.

478. Thus, Defendants individually and collaboratively had fiduciary duties, responsibilities and obligations towards Plaintiff.

479. Defendants individually, collaboratively, collectively, collusively and fraudulently breached such fiduciary duties and took advantage of their position of trust to benefit themselves and QHPNY when they intentionally and coercively intimidated and forced Plaintiff to work separate numerous extra hours for various business entities by fraudulently misrepresenting ownership of such entities with corrupt intent of defrauding Plaintiff into working such extra hours promising him extra and separate compensation.

480. Plaintiff was promised and it was agreed between Plaintiff and Defendants that Plaintiff would be paid two times the pay received at QHPNY for working these numerous extra hours for such multiple business entities claimed by Defendants as owned by Haider Ali Khan.

481. Plaintiff relied on such claims by Defendants of ownership by Haider who was Plaintiff's manager at QHPNY, MIS Director and owner of QHPNY, worked numerous extra hours between 2015-2018, and did work for such business entities as was intimidated and coerced by the Defendants, but the Defendants as of this day have failed to pay or compensate Plaintiff for such numerous separate extra hours worked for such entities.

482. Plaintiff relied on such claims by Defendants of ownership by Haider and followed through with his part of the contract and worked the numerous extra hours. Plaintiff was intimidated and coercively forced to work for such business entities by the Defendants under agreed upon and promised payment terms.

483. Plaintiff later found out that he was constructively defrauded by Defendants with intentional constructively fabricated dubious claims of ownership by Haider Ali Khan.

484. Defendants unjustly used their superior position of trust over Plaintiff to misrepresent, fraudulently conceal and constructively defraud Plaintiff.

485. Between December of 2015 and July 2018, and at all relevant times Defendants used their superior advantageous positions of trust and knowingly, and egregiously perpetrated constructive fraud upon Plaintiff with malicious and corrupt intent to get work done from Plaintiff when they took advantage of their position of trust to benefit themselves and QHPNY and intentionally and coercively intimidated and forced Plaintiff to work numerous extra hours for various business entities by misrepresenting ownership of such entities and then denying Plaintiff extra and separate compensation as promised.

486. Upon information and belief, and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

487. Defendants individually, collaboratively, collectively, collusively and fraudulently knowingly aided and abetted each other to constructively defraud Plaintiff into working numerous extra hours for such business entities.

488. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained and continues to sustain injuries including but not limited to severe economic/financial injuries, pain and suffering, and extreme and severe mental anguish and emotional distress.  Plaintiff is thereby also entitled to general and compensatory damages in amounts to be determined at trial.

489. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

### NINETEENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### against All Defendants

490. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

491. Defendants intentionally engaged in outrageous conduct towards Plaintiff with the incorrupt intent to cause, or with reckless disregard for the probability of causing, Plaintiff to suffer severe emotional distress, and with wanton and reckless disregard for the injurious result to Plaintiff, as set forth hereinabove. The conduct set forth hereinabove was extreme and outrageous and an abuse of the authority and position of Defendants. The above-described conduct was intended to cause severe emotional distress, or was done in conscious disregard of the probability of causing such distress. This

conduct exceeded the inherent risks of employment and was not the sort of conduct normally expected from an employer.

492. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

493. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including extreme and severe mental anguish and emotional distress; and  Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

494. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

495. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

## TWENTIETH CAUSE OF ACTION
### Breach of Fiduciary Duties under the Employee Retirement Income Security Act (ERISA)
### Violation of 29 U.S.C Section 1140, 1141
### against QHPNY and All Other Defendants
as active collusive participants, collaborators, conspirators, aiders and abettors

496. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

497. Plaintiff was an employee of QHPNY between 2015 and 2018.

498. QHPNY had Plaintiff deposit his 401k funds in to account operated and controlled by DMC.

499. At all relevant times between 2015 and 2018 Defendants had contractual and fiduciary duties, obligations and responsibilities towards Plaintiff and other QHPNY employees under ERISA laws, for owning and controlling and or operating, and or managing and or administering Plaintiff's and other QHPNY employees' 401k plan, accounts and funds.

500. At the time of plaintiff was enticed at QHPNY to open the 401k account and at all relevant times thereafter and between 2015 – 2018, Defendants failed to provide proper disclosures legally required under the QHPNY run and DMC managed, operated and administered 401k plan.

501. At the time of plaintiff was enticed at QHPNY to open the 401k account and at all relevant times thereafter and between 2015 – 2018, Plaintiff was intentionally provided false documentation by Defendants Haider, Clark, Safia showing and claiming DMC and employee 401k accounts were owned, operated and administered by Haider Ali Khan and Nazeer Khan.

502. At the time of plaintiff was enticed at QHPNY to open the 401k account and at all relevant times thereafter and between 2015 – 2018, Plaintiff was intentionally and continuously provided false information. Defendants Haider, Clark, Safia engaged in misrepresentation, fraudulent concealment and omission when they failed to disclose to Plaintiff that such 401k accounts and funds were in fact under direct ownership control of a QHPNY employee Azima Bano.

503. In or around 2018 Plaintiff found discrepancies in his 401k account where the match and vesting by QHPNY was not being posted, and or wrongly posted and or not timely posted.

504. In or around 2018 Plaintiff found exorbitant amounts were being posted on his account under the disguise of administrative fees, by claimed account administrator Nazeer Khan without any notification, disclosure.

505. Plaintiff reported to QHPNY, CFO/HR Manager Clark and VP Safia Khan and Haider and requested proper information and disclosure and explanation.

506. Plaintiff was informed that Nazeer was owner, operator and the administrator of such 401k account and funds as was also stated on Plaintiff's 401k statements, but was denied all account and fund information and access to claimed administrator Nazeer by Clark, Safia and Haider.

507. Plaintiff got alarmed and reached out to Clark, Safia, Haider, DMC claimed, operational manager Shari Rosenberg at DMC and requested full disclosures on his 401k account per federal and state requirements requesting full disclosures on ownership and administrator Nazeer, his investments and exorbitant fees charged without notice and authority, who also denied Plaintiff any information and in fact misrepresented and fraudulently concealed material facts, stating Plaintiff should talk to Haider as he is the owner of DMC and such accounts and have control over such Plaintiff's and QHPNY's employees 401k account.

508. Plaintiff got further alarmed and once again reached out and requested proper disclosures from QHPNY, Richard Clark, VP Safia Khan and Haider Ali Khan and requested ownership information on QHPNY and DMC offered/run 401k plan and his 401k account and funds. But Plaintiff was again denied access to any information on DMC ownership/management, contact information to administrator Nazeer and information on his account administration and fees being charged and discrepancies in matchings and vesting in his account.

509. In or around May-June 2018, Plaintiff once again complained to CFO/HR Manager Clark and VP Safia about his 401k account being mismanaged, discrepancies in company match and vesting and the exorbitant fees charged by account administrator Nazeer without any disclosures or notices

provided. Plaintiff also once again requested full disclosures from Clark, Safia and Haider on such 401k account offered by QHPNY and run under DMC management and administration.

510. But Plaintiff was again denied any information by Defendants and also denied any access to Plaintiff's account administrator Nazeer.

511. Plaintiff was on further alarmed and requested CFO/HR Manager Clark procedure to file complaints as Plaintiff was concerned and worried about his 401k account and funds.

512. It was then Defendant CFO Richard Clark got concerned, confided and informed Plaintiff:

    a. That, although DMC was fully operated and controlled by Haider, Nazeer, Safia, Sabiha, but on paper it was not owned by them to conceal their absolute simultaneous involvement in and control of DMC and QHPNY operations and their financials, from the state and federal regulators where DMC was claimed as unrelated entity.

    b. That, Plaintiff was not misrepresented and true control of DMC and 401k accounts still rested with the Haider, Nazeer, Sabiha and Safia no matter what is claimed with state and federal governments and their regulators.

    c. That, no matter what is officially claimed and who is shown as owner of DMC and other QHPNY claimed unrelated entities on any paper, Khans still fully controlled DMC and such other entities operationally and QHPNY 401k accounts and funds and access and control over Plaintiff's and QHPNY employees' 401k funds and accounts, but maintain such control covertly to conceal their involvement in and control of DMC from state and federal regulators.

    d. That, Plaintiff should not worry about his 401k account or funds as it is in fact in safe hands of his employer(s).

    e. That although DMC and Plaintiff's 401k account was fully controlled, operated by the Khans, but on the paper the Khans have been using the Chairman Arain Nawaz as the proxy owner and when the Khans established other related entities like House call Telemed, MCAIPA, MedlyCare etc. they switched Arain Nawaz to take over proxy ownership of such newly established entities for the Khans and then DMC ownership was manipulatively staged and transferred by Haider Ali Khan from Arain Nawaz to QHPNY employee/relative Azima Bano.

513. Plaintiff was informed QHPNY employee relative/friend of the Khans' Azima Bano as claims controller was also rewarded in the form of increased pay as kickbacks for clocking ownership, control, operation of DMC and the ownership and operation of employee 401k accounts and funds, for the Defendants.

514. Plaintiff was informed by CFO Clark that he, along all other Defendants under Haider Ali Khan's control have been collaboratively helping the Khans to keep all such information under wraps with the intent to conceal from the state and federal regulators and auditors, the Khans absolute simultaneous operational, functional and financial control and authority over DMC and QHPNY and over other claimed unrelated entities like HCT, MCAIPA, Ultimed, Medly and also to cloak QHPNY

Defendants' undeclared India operations using QHPNY federal funds, from the federal and state regulators/investigators and auditors.

515. Clark's confided that he collaboratively with other Defendants, had been filing false denials of conflict of interests and other relative financials and engaging in invoicing and HR manipulations and other violations involving Defendants, DMC and other entities, on behalf of the Khans, and their proxy DMC owners QHPNY Chairman Arain Nawaz and Azima Bano.

516. But then Clark threatened Plaintiff stating, "you don't want to go there", "you don't want to complain about your 401k".

517. Plaintiff was then further coercively intimidated and threatened by CFO Richard Clark, stating if Plaintiff values his job, he should not complain about his 401k account.

518. Plaintiff was informed by Clark that Defendants including Clark have collaboratively and officially claimed with the state and federal regulators and their auditors, that DMC was an independent unrelated entity and that the Khans and especially Haider Ali Khan had nothing to do with DMC, its ownership, management, control and or operations or financials and or control of QHPNY's daily operations, MIS functions and or financials.

519. Plaintiff was then coercively intimidated by CFO Richard Clark who stated that Plaintiff should also do the same and state the same false information and claim DMC as unrelated entity independent of the Khans and independent especially of Haider, to the state and federal investigators/auditors if interviewed by the state and federal regulators during audits, and that the Khans as usual expect that from Plaintiff.

520. Between May and July of 2018 Plaintiff was repeatedly harassed and coercively intimidated Clark, Safia and Haider not to complain about his 401k or about Nazeer as administrator of Plaintiff's 401k account and funds and further threatened Plaintiff of dire consequences if he takes any of his complaints about QHPNY violations, about his 401k account and or about DMC ,any further.

521. Plaintiff was also denied enrollment period and enrollment into health benefits that was advertised and provided to other QHPNY employees in retaliation to Plaintiff voicing his concerns about his 401k enrolment plan, account and funds.

522. Clark stated it will be no use for Plaintiff to further complain about his 401k as all Defendants at QHPNY, DMC, including Clark, Safia, Haider, Sabiha, Nazeer, Chairman Arain Nawaz, employee/relative Azima Bano and DMC operational manager Shari Rosenberg under Haider Ali Khan at DMC and even CEO Olsen were fully aware of and had full knowledge of such official claims made about DMC and Haider, by and on behalf of QHPNY and that, all Defendants were working hard and in collaboration in such efforts to conceal Haider and the Khans' control over DMC and other entities, from the State and Federal regulators keeping them in dark about DMC and other entities controlled by Haider and his family, with good intent so as for QHPNY and the Khans to retain the federal contracts and  secure Plaintiff's/QHPNY employees' jobs avoiding closure of QHPNY, and that such misrepresentations were for good cause.

523. CFO Clark defiantly affirmed that in collaboration with other Defendants and on behalf of the Khans and QHPNY he has also officially claimed DMC as unrelated vendor entity and officially claimed absence of conflict of interests at QHPNY, with their own private supposedly independent auditors, and also in bids to state and federal regulators, with intent to aid the Khans to procure, maintain, retain, renew such federal contracts with Federal CMS and NYSDFS with good intent to secure Plaintiff's/QHPNY employees' jobs.

524. Plaintiff was still not provided with any information on his concerns about improprieties with his 401k account or funds, with Clark, Safia, Haider refusing to address Plaintiff's concerns on discrepancies in his account and balances, matches and exorbitant fees being charged.

525. Plaintiff was still not provided with the required disclosures on his 401k plan, accounts and funds that was claimed administered by Nazeer at DMC.

526. Plaintiff was retaliatorily and wrongfully terminated on July 25, 2018 for reporting and raising concerns inter alia on serious violations of rules, laws and regulations at QHPNY with his boss CEO Frank Olsen and with state and federal regulators.

527. After termination Plaintiff stopped getting regular statements or any disclosures or information on his 401k account and funds and was not provided any further information his 401k account and his funds and his concerns.

528. As threatened after Plaintiff's retaliatory termination Defendants Safia, Clark and Haider in further retaliation aided QHPNY to demand forfeit of Plaintiff's such earnings, acting on their threat that was given to Plaintiff by them stating Plaintiff will lose his 401k earnings if he ever complained about any QHPNY violations.

529. Upon knowledge and belief Plaintiff's 401k account has now been wiped clean/transferred without Plaintiff's permission, without any information, notice or disclosure provided to Plaintiff, by Defendants.

530. Upon information and belief such employee 401k accounts and funds were collaboratively but illicitly accessed managed, operated and or administered by Nazeer and Haider, who claimed to be the owners, operators and administrators of such 401k plan even on Plaintiff's 401k statements under false pretense of legally owning DMC and DMC run QHPNY 401k plan.

531. Upon information and belief, Nazeer and Haider consensually, collusively, individually, collaboratively and collectively were aided by the other Defendants named, in furtherance of such improper, unlawful activity.

532. Upon information and belief Defendants misrepresented, fraudulently concealed from Plaintiff that DMC and such QHPNY employee 401k accounts and funds were in fact strategically but covertly owned controlled, operated, manipulated by QHPNY Chairman Nawaz and or employee/relative Azima Bano, who were aided and abetted by Defendants, to conceal their identity as owners of DMC and of such 401k while being under employment and or an employee at QHPNY with corrupt intent to further conceal existence of conflict of interests at QHPNY, from Plaintiff and state and federal

regulators, as a part of Defendants larger conspiracy to misrepresent and defraud state and federal government and their regulators.

533. Upon information and belief such illicit access and administration of employee 401k accounts and funds to Nazeer and Haider was covertly and illicitly provided and allowed by Nawaz and Azima Bano at different times for their own benefit and personal gains.

534. Upon information and belief Defendants Clark and or Nawaz and or Bano and received kickbacks in some form under false pretense of unqualified employment and or earnings and or pay raises and or income and or profits for their active cooperation, contribution, cloaking and maintaining silence on such unlawful activities for and by the Khans, Haider, Nazeer, Safia, Sabiha.

535. Upon information and belief between 2015 and 2018 Defendants individually and or collaboratively and or collectively allowed illicitly access and or took control and or administered and or allowed illicit control and administration of Plaintiff's and QHPNY's employees' 401k accounts and funds and engaged in its misuse charging exorbitant fees and or allowing exorbitant fees to be charged to Plaintiff's 401k account, for their personal gains.

536. Upon information and belief between 2015 and 2018 Defendants individually and or collaboratively, and or collectively aided each other and transferred Plaintiff's 401k account/funds and or control and administration and or knowingly allowed Plaintiff's 401k account/funds and or control and administration of Plaintiff's 401k account/funds to be transferred to unauthorized related parties, relatives and or to employees of QHPNY or to the Khan family members for their own benefit and for their own personal gains, without proper and full disclosures.

537. Defendants failed to perform due diligence when selecting investments or working with a 401k management firm and then failed to disclose such diligently selected investments coercing Plaintiff to stick to just one investment.

538. Defendants failed to evaluate the performance of plan administrators and to perform due diligence and comparisons on a regular basis.

539. Defendants engaged in misrepresentations and fraudulent concealments and omissions with intent to mislead Plaintiff and other employees, plan participants and beneficiaries and state and federal regulators.

540. Upon information and belief between 2015 and 2018 Defendants individually, collaboratively, collectively and intentionally aided each other and:

   a. Breached their fiduciary duties and obligations towards Plaintiff and QHPNY employees, in violation of ERISA laws.

   b. Intentionally misrepresented, fraudulently concealed and omit material facts on Plaintiff's and QHPNY's employees 401k account and funds with corrupt intent, in violation of ERISA laws.

   c. Failed to provide such full truthful disclosure to Plaintiff on his 401k account and funds and discrepancies, exorbitant fees, and its administration, in violation of ERISA laws.

d. Illicitly gained or allowed, illicit access, control, manipulation and or administration Plaintiff's 401k funds for their personal gains and corrupt intent, in violation of ERISA laws.

e. Caused discrepancies and delays in company match, vesting and account balances, in violation of ERISA laws.

f. Charged exorbitant fees without proper disclosure and without Plaintiff's knowledge and authority, in violation of ERISA laws.

g. Denied information on Plaintiff's 401k account discrepancies, mismatches fees and mishandlings, in violation of ERISA laws.

h. Defendants retaliatorily interfered with Plaintiff's exercise of ERISA rights, in violation of ERISA laws.

i. Repeatedly made materially false statements, in violation of ERISA laws.

j. Altered administration of accounts and contact information to improperly obtain distributions, and or transact transfers of administrative control over Plaintiff's account, in violation of ERISA laws.

k. Defendants intentionally failed to disclose the above and other required information to Plaintiff truthfully and on an annual basis and in timely manner.

l. Defendants used threats, intimidation, harassment and coercion to deny Plaintiff his entitled rights under ERISA

541. Upon information and belief, all of the above stated activities were perpetrated collusively by Defendants and in intentional violation of ERISA laws.

542. Upon information and belief, all of the above stated activities were perpetrated by Defendants without proper disclosure, notice or authority and without Plaintiff's knowledge and authorization and for purpose other than to act "solely in the interest of plan participants and beneficiaries," and for the "exclusive purpose" of providing benefits to them.

543. Upon information and belief, all of the above stated activities were perpetrated by Defendants as a part of larger conspiracy to misrepresent and defraud state and federal government and regulators.

544. Plaintiff believes and thereon alleges Defendants intentionally breached their fiduciary duties and obligations under the ERISA laws and also violated 29 U.S.C Section 1140 and 29 U.S.C Section 1141 under ERISA laws.

545. Defendants continue to violate ERISA laws.

546. Plaintiff still has not received any information on his account, funds, concerns, complaints and has still not received proper disclosures or statements as to who actually is in control of Plaintiff's 401k accounts and funds and their whereabouts

547. Plaintiff believes Bano owned DMC is insolvent and finds his 401k funds and other employees' 401k funds and accounts in illicit hands and in jeopardy and still being illegally accessed, controlled, managed, manipulated and or administrated by unauthorized and undisclosed parties.

548. Upon information and belief, Defendant QHPNY, was proactively aided and abetted in such violation by all other Defendants named.

549. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury and significant economic loss. Plaintiff has sustained and continues to sustain injuries including extreme and severe mental anguish; Such conduct by Defendant has damaged Plaintiff substantially, including but not limited to Plaintiff suffering personal hardship, economic loss, in amount to be determined at trial. Plaintiff has suffered severe emotional distress, due to denial of full information and access to Plaintiff's 401k account and funds at the time Plaintiff was in most dire need of his funds due to his retaliatory discharged by QHPNY in violation of other federal and state laws. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

550. Upon information and belief, and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

551. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

## TWENTYFIRST CAUSE OF ACTION
### RICO, Violation of 18 U.S.C. §§ 1961(1)(5), 1962(c): All Defendants

552. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

553. All defendants are culpable persons as defined in 18 U.S.C. § 1961(3).

554. At all relevant times, Defendants were employed by or associated with an "enterprise" as defined under 18 U.S.C. § 1961(4).

555. QHPNY, QHP as legal entities, were at all relevant periods, an enterprise engaged in and whose activities did affect interstate, and intercontinent commerce.

556. Upon information and belief, Defendants used their positions as employees and officers of the enterprise and/or influence over the affairs of QHPNY, QHP to further their unlawful activities.

557. Upon information and belief, Defendants willfully, with the knowledge of the illegality of their actions, agreed to, conducted and participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.

558. Upon information and belief, Continuously, between 2015-2018, defendants knowingly and willfully, by means of various schemes, caused multiple related acts which qualify as prohibited activities or predicate acts pursuant to 18 U.S.C. §1961 indictable under federal law, including: Wire Fraud,

violating 18 U.S.C. § 1343, each and every time they used or foreseeably caused wires to be used to distribute the materials related to their schemes, including but not limited to emails, texts, web, social media between 2015 and 2018 in furtherance of the scheme to make false representations to the federal and NY state regulators, investigators and auditors regarding use of federal funds received, in furtherance of a scheme to make false representations to the state of New York regarding related entities and transfer of federal funds to such related entities, by making materially false representations to CMS and DFS about the related entities, intending to induce CMS to provide federal funds amounting to about 40 million; procured contracts and money by means of false or fraudulent pretenses, representations, and transmitted and or caused to be transmitted by means of wire, radio, or television communication in interstate and foreign commerce, including but not limited to India.

559. Upon information and belief, all of the predicate acts were continuous so as to form a pattern of racketeering activity: Defendants engaged in multiple predicate acts, including but not limited to, wire fraud, defendants engaged in these predicate acts from between 2015-2018; defendants engaged in these predicate acts in furtherance of several schemes with a common purpose and goal; there were at least six schemes effectuating the pattern of racketeering: (i) defendants engaged in a scheme to commit wire fraud against CMS and DFS by misrepresenting their relation to self-established entities; (ii) defendants defrauded the United States; (iii) defendants misrepresented to state and federal investigators the nature of QHPNY's relationship with QHP, DMC, HCT, Medly, Ultimed etc., the nature of their financial interests, hold, control in such entities; (iv) defendants engaged in a pattern of behavior to knowingly and willfully obstruct an official investigation by misrepresenting, concealing, information and documents; (v) Defendants committed such unlawful acts and engaged in pattern of such behavior, and scheme with wrongful intention to maliciously, fraudulently, and oppressively, retaliate against anyone for voicing concerns about rules, laws and regulatory violations involving Defendants; (vi) defendants engaged in a pattern of behavior with intent and scheme of egregiously injuring Plaintiff, in furtherance of their additional and other violations and frauds.

560. Upon information and belief, Defendants engaged in racketeering activity and acted with an improper and evil motive and schemes resulting and amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

561. Upon information and belief, these acts and the schemes that they furthered all occurred after RICO was effective and more than two of such acts occurred within 10 years of one another.

562. Upon information and belief, the Defendants' conduct and participation in a RICO enterprise involved activities which directly affected interstate commerce, and also foreign commerce including by transmission of false and fraudulent information to and from New York, Florida and India, taking of funds belonging to federal government, and other interstate activities.

563. Upon information and belief, all of the predicate acts were related, establishing a pattern of racketeering activity under 18 U.S.C. § 1962, as their common purpose was to ensure, through

unlawful means, procurement of federal funds would not be hindered in any way, and that the fraud on federal and state governments and the United States would not be revealed, by materially misrepresenting the financial position of QHPNY, QHP, DMC; defendants each personally or through their agents, directly or indirectly, participated in the acts and employed the same or similar methods and ultimately by inflicting egregious harm upon Plaintiff.

564. Upon information and belief, Defendants caused the federal and NY state governments to rely on their misrepresentations as to the nature of their relation to such entities, and inter related-entity transfer of federal funds and loans, and knowingly engage in and perpetuated and furthered their racketeering activity to willfully cause harm to Plaintiff using threats, harassment, threats of physical harm and coercion against Plaintiff, for refusing to collude with the Defendants in their unlawful activity, for refusing to condone such unlawful activities, for refusing to fraudulently conceal such activities from state and federal governments and their regulators.

565. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

566. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

567. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

568. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

569. Plaintiff is entitled to treble damages, costs, and attorneys' fees.

570. WHEREFORE, Plaintiff request trial by jury and judgment for damages sustained.

## TWENTYSECOND CAUSE OF ACTION
### RICO–Violation of 18 U.S.C. §§ 1961(5), 1962(d): All Defendants

571. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into

this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

572. Upon information and belief, Defendants, participating in the enterprise described in above cause, did so with the common purpose to ensure, through unlawful means, procurement of federal funds would not be hindered in any way and that the fraud on federal and state governments and the United States would not be revealed.

573. Upon information and belief, Defendants did conspire to engage in a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1962 by intending to further multiple schemes which, when completed, would satisfy the elements of substantive RICO criminal offenses and adopted the goal of furthering or facilitating their criminal endeavor.

574. Upon information and belief, Defendants agreed to commit the specified predicate acts, violating 18 U.S.C. §1962 after RICO was effective and within 10 years of one another.

575. Upon information and belief, Defendants' scheme was organized in a manner in which all participants agreed and in fact, either directly or indirectly through other participants, caused plaintiff serious harm which further resulted in defendants unlawfully obtaining, maintaining and retaining federal contracts and millions of dollars about 40 million federal funds annually, in violation of 18 U.S.C. § 1962, defrauding the United States and state and federal governments while continuing inflicting egregious harm upon Plaintiff and engaging in the pattern of behavior to knowingly and willfully obstruct an official investigation by misrepresenting, concealing, information and documents and using threats, harassment, threats of physical harm and coercion against Plaintiff.

576. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

577. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

578. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

579. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

580. Plaintiff is entitled to treble damages, costs, and attorneys' fees.

581. WHEREFORE, Plaintiff request trial by jury and judgment for damages sustained.

### TWENTYTHIRD CAUSE OF ACTION
### RICO, Violation of 18 U.S.C. §§ 1961(1)(5), 1962(a): All Defendants

582. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

583. All defendants are culpable persons as defined in 18 U.S.C. § 1961(3).

584. At all relevant times, Defendants were employed by or associated with an "enterprise" as defined under 18 U.S.C. § 1961(4).

585. QHPNY, QHP as legal entities, were, at all relevant periods, an enterprise engaged in and whose activities did affect interstate, and intercontinental commerce.

586. Defendants used their positions as employees and officers of the enterprise and/or influence over the affairs of QHPNY, QHP and DMC to further their unlawful activities.

587. Defendants willfully, with the knowledge of the illegality of their actions, agreed to, conducted and participated, directly or indirectly, in their conduct and conduct of the enterprise's affairs received income derived, directly and indirectly, from a pattern of racketeering activity in which Defendants participated as a principal within the meaning of section 2, title 18, United States Code, to use and invest, directly and indirectly, in part or whole of such income, or the proceeds of such income, in acquisition of interests in, and the establishment and operation of, such enterprise(s) which engaged in, and the activities of which affected, interstate and foreign commerce.

588. Defendants willfully, with the knowledge of the illegality of their actions, agreed to, conducted and participated, directly or indirectly, in their conduct and conduct of the enterprise's affairs received federal funds as income derived, directly and indirectly, from a pattern of racketeering activity in which Defendants participated as a principal within the meaning of section 2, title 18, United States Code, and used and invested, directly and indirectly, in part or whole of such income, or the proceeds of such income, in acquisition of interests in, and the establishment and operation of enterprise(s) QHP, QHPNY, DMC, House Call Telemed, MiCAIPA, Medly Care USA, Medly Care India, Ultimed, Virtual Health Group, SNS Consultant, etc., which engaged in, and the activities of which affected, interstate and foreign commerce.

589. Which pattern of racketeering activities, when completed, would satisfy the elements of substantive RICO criminal offenses and adopted the goal of furthering or facilitating their criminal endeavor.

590. Upon information and belief, Defendants did complete such racketeering activities and are in the process of furthering such activities.

591. Defendants agreed to commit the specified predicate acts, violating 18 U.S.C. §1962 after RICO was effective and within 10 years of one another.

592. Upon information and belief, and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

593. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

594. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

595. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

596. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

597. Plaintiff is entitled to treble damages, costs, and attorneys' fees.

598. WHEREFORE, Plaintiff request trial by jury and judgment for damages sustained.

### TWENTYTFOURTH CAUSE OF ACTION
### RICO, Violation of 18 U.S.C. §§ 1961(1)(5), 1962(b): All Defendants

599. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

600. All defendants are culpable persons as defined in 18 U.S.C. § 1961(3).

601. At all relevant times, Defendants were employed by or associated with an "enterprise" as defined under 18 U.S.C. § 1961(4).

602. Upon information and belief, QHPNY, QHP as legal entities were, at all relevant periods, an enterprise engaged in and whose activities did affect interstate, and intercontinental commerce.

603. Upon information and belief, Defendants used their positions as employees and officers of the enterprise and/or influence over the affairs of QHPNY, QHP to further their unlawful activities.

604. Upon information and belief, Defendants willfully, with the knowledge of the illegality of their actions, agreed to, conducted and participated, directly or indirectly, in their conduct and conduct of the enterprise's affairs through a pattern of racketeering activity engaged in, acquiring interests and control in, and establishing and operating QHP, QHPNY, DMC, HCT, MCAIPA, Medly in USA, Medly in India, Ultimed, Virtual Health Group, SNS Consultant, etc., which entities collaboratively are engaged in, or the activities of which affect, interstate or foreign commerce.

605. Upon information and belief, which pattern of racketeering activities, when completed, would satisfy the elements of substantive RICO criminal offenses and adopted the goal of furthering or facilitating their criminal endeavor.

606. Upon information and belief, Defendants did complete such racketeering activities and are in the process of furthering such activities.

607. Upon information and belief, Defendants agreed to commit the specified predicate acts, violating 18 U.S.C. §1962 after RICO was effective and within 10 years of one another.

608. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

609. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

610. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

611. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

612. Plaintiff is entitled to treble damages, costs, and attorneys' fees.

613. WHEREFORE, Plaintiff request trial by jury and judgment for damages sustained.

## TWENTYFIFTH CAUSE OF ACTION
### Civil Conspiracy in-consent
### against All Defendants

614. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

615. Upon information and belief, Defendants committed violations of various federal and NY state laws as detailed herein above, common law fraud, constructive fraud and racketeering acts violating RICO and other torts.

616. Upon information and belief, Defendants agreed to participate in multiple schemes against governments and plaintiff, including, but are not limited to, intentional and purposeful participation in the activities in furtherance of their plan mislead, misrepresent, fraudulently conceal, omit and defraud Plaintiff, state and federal regulators and endangered health, health care, privacy, safety and security of 5000+ frail and elderly members in furtherance of these schemes, defendants committed overt and unlawful acts, including acts of racketeering, as well as breach of contract and violations of laws and regulations.

617. Upon information and belief, Defendants individually, collaboratively, collectively conspiringly, collusively, consensually, knowingly, intentionally, maliciously, egregiously, constructively, fraudulently, collusively and premeditatedly acted in bad faith when they perpetrated and perpetuated and furthered fraud and fraudulent activities to aid each other to collaboratively, collectively conspiringly, collusively, consensually, knowingly, intentionally, maliciously, egregiously, constructively, fraudulently and premeditatedly, collusively and intentionally commit other illegal acts including but not limited to using threats, harassment, threats of physical harm and coercion against Plaintiff and planning, staging and cloaking retaliation against Plaintiff under false pretense and against state and federal laws.

618. As a proximate result of Defendants intentionally malicious collusive unlawful actions Plaintiff has suffered injury to his personal, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, professional and general damage. Plaintiff has sustained and continues to sustain injuries including but not limited to economic and professional injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

619. Plaintiff believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

620. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount to be determined at trial.

621. Plaintiff has suffered special damages in the form of lost opportunities of employment in present and in future and has lost his very mode of earning a living.

## TWENTYSIXTH CAUSE OF ACTION
### Piercing the Corporate Veil
### against All Defendants

622. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in all preceding paragraphs and in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

623. Upon information and belief, at all relevant times, Defendants owners of QHPNY Haider, Nazeer, Safia and Safia, their aiders and abettors CEO Olsen, CFO/HR Manager Clark, Medical Director Bonano, Board Chairman Nawaz,(also owners of misrepresented covert controlled entities used to syphon QHPNY federal funds) Claims controller/operator Bano (also Covert owner of misrepresented entity DMC, Inc. and controlling all other comingled entities used to syphon QHPNY federal funds, phantom billing, and other violations using and comingling self-controlled federally and state undeclared and misrepresented entities), Rosenberg operational manager of DMC under Haider, Bano and Nawaz, and signatory on fabricated ownership papers collusively employed by Haider, are all principle perpetrators involved in aiding each other to syphon federal funds out of QHPNY, and involved in defrauding state and federal government and their regulators, individually, collaboratively and collectively.

624. Upon information and belief, at all relevant times, Defendants Haider, Nazeer, VP Safia, Compliance Director Sabiha, also owned approximately 70% of all stocks in QHP as the holding company for QHPNY and thus were and also were routinely claimed owners of QHPNY, overtly by Defendants themselves.

625. Upon information and belief, at all relevant times, at all relevant times, Defendants named, approved use of funds and other assets of QHPNY to pay and compensate employees of other companies and for the benefit of related entities owned/operated and controlled by the Defendants themselves.

626. Upon information and belief, at all relevant times, Defendants individually, collaboratively, collectively, collusively fully controlled such funds, assets and inter comingled fabricated company

contracts of QHPNY and collaboratively and collusively used each other to act as proxy owners for each other for such entities, with corrupt intent to defraud federal, state governments to bid, obtain, maintain such Medicare and federal contracts, using such fraudulent filings and means.

627. Upon information and belief, at all relevant times, Defendants named approved use of funds, assets, breach of data and database containing PHI, and have approved, or did not object to the use of QHPNY funds, assets, database for personal use unrelated to claimed QHPNY business; also utilizing QHPNY phone systems, computer systems and employees for defendants' personal use and benefits.

628. Upon information and belief, at all relevant times, Defendants have approved relatives and friends employed in QHP and other related entities/businesses entities of defendants to obtain employment benefits/wages directly and indirectly from QHPNY, for defendants' personal benefits.

629. Upon information and belief, at all relevant times, Defendants routinely comingled QHPNY assets and employees with assets and employees of Defendants', QHP and with other fully controlled and operated related business entities, for Defendants personal benefits.

630. Upon information and belief, QHP, QHPNY, and also QHPNY claimed unrelated entities DMC, House Call Telemed, MCAIPA, Medly Care, Ultimed, Kappa, were established and collaboratively controlled and operated by Defendants as mere alter egos, with conspiracy and corrupt intent and purpose of committing, perpetuating and furthering fraud on federal and state government and to syphon federal funds from QHPNY.

631. Plaintiff himself was coerced, harassed and forcefully comingled with the above named business entities controlled by the Defendants and forced to work for all such related entities including for QHP, and comingle QHPNY assets, data, employees and databases with assets, data, employees and databases for the Defendants, for their personal benefits under false pretense.

632. Upon information and belief, numerous employees of such covertly fully controlled entities by the Defendants and comingled employees of QHPNY and QHP including CFO Clark worked for QHPNY, QHP and other such comingled entities for Defendants, but were paid via QHPNY payroll or funds in control of Defendants, for Defendants personal benefits.

633. Defendants fraudulently and for corrupt intent used Plaintiff as a front for all such comingled activities and harassed, threatened and bullied Plaintiff to lie to the state and federal regulators, auditors and investigators on behalf of the Defendants.

634. Upon information and belief, QHPNY was intentionally kept under employed and undercapitalized by the Defendants to manipulate QHPNY financials and personnel and HR records, to aide themselves in fraudulently concealing and misrepresenting comingled employments and such covertly comingled and concealed fully controlled entities, to perpetuate and propagate such other additional frauds including but not limited to syphoning of federal funds and defrauding federal and state governments.

635. Upon information and belief, comingled deceptive contracts were drawn by the Defendants where employees were coerced in signing such deceptive contracts on behalf of the defendants for QHPNY and other related entities with corrupt intent to misrepresent and to mislead the federal and state

regulators to conceal Defendants/perpetrators' control of such covertly comingled and run business entities.

636. Upon information and belief, that this is not the first time the Defendants were involved in comingling, QHPNY was written up previously for similar violations in 2012-2013 audit reports published online by NYS DFS regulators. QHPNY was also written up for similar violations by NYS regulators under "report of examination of quality health plans of New York inc." dated January 17, 2017, (available online at NYS Dept. of Financial Services web site) when same perpetrators were found using QHPNY and its federal funds in their control, as their personal bank account used for their personal financial gains. Such report inter alia, states:

*"The HMO, during the examination, paid the premiums for the personal malpractice insurance policy of the HMO's former Medical Director, Dr. Nazeer Khan. The examiner's review indicated that the 2012 and 2013 malpractice insurance policies were written and billed to Dr. Nazeer Khan."*
*"Several invoices for wages and benefits billed to Innovative Health Operations were paid by the HMO."*
*"In each of the above situations, the HMO violated Part 98-1.10(b) of the Administrative Rules and Regulations of the New York State Health Department."*

637. Upon information and belief, inter alia above stated Defendants' willful unlawful and comingled activities including but not limited to fraudulent misrepresentation and concealment of such comingled activities and violation of rules, laws and regulations caused infliction of intentional irreparable and irreversible harm and egregious pain on Plaintiff in further intentional violation of state and federal laws including but not limited to violation of FCA rules, laws and regulations against retaliation.

638. Upon information and belief, Defendants did retaliate and aided QHPNY to retaliate against Plaintiff for voicing concerns about rules, laws and regulatory violations, which violations he also believed in good faith to be criminal violations.

639. Upon information and belief, and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and in furtherance of additional and other violations and frauds and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

640. For the reasons set forth herein, if the Court does not pierce QHPNY's and QHP's corporate veil and impose personal liabilities on Defendants named, Plaintiff will be denied the ability to recover damages he has suffered as a result of Defendants' conspiracy and wrongful and illegal conduct.

641. Wherefore, Plaintiff hereby demands that the court enter judgment against Defendants named piercing the corporate veil and awarding such damages against each defendant as may be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

A. **On 1st Cause:**

    i.    Awarding two times back pay and interest on the back pay and all special damages sustained as a result of QHPNY and Defendants' retaliation and wrongful termination under Section 3730(h) of the False Claims Act, 31 U.S.C. 3730(h);

    ii.    An injunction against QHPNY be awarded declaring Plaintiff's termination wrongful, enjoining employer from further violations and re-instatement with full seniority be awarded; or an award of front pay in lieu of reinstatement be awarded.

    iii.    Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

B. **On 2nd Cause:**

    i.    Awarding two times back pay and interest on the back pay and all special damages sustained as a result of Defendants' reprisal and wrongful termination under Section 4712 of 41 U.S.C. 4712.

    ii.    An injunction against QHPNY be awarded declaring Plaintiff's termination wrongful, enjoining employer from further violations and re-instatement with full seniority be awarded; or an award of front pay in lieu of reinstatement be awarded.

    iii.    Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

C. **On 3rd Cause:**

    i.    Awarding two times back pay and interest on the back pay and all special damages sustained as a result of Defendants' reprisal and wrongful termination under NYLL Section 215.

    ii.    An injunction against QHPNY be awarded declaring Plaintiff's termination wrongful, enjoining employer from further violations and re-instatement with full seniority be awarded; or an award of front pay in lieu of reinstatement be awarded.

    iii.    Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

D. **On 4TH Cause:**

    i.    Plaintiff has been damaged in an amount to be determined at trial but not less than $5,000,000.00;

    ii.    An injunction against QHPNY be awarded declaring Plaintiff's termination wrongful, enjoining employer from further violations and re-instatement with full seniority be awarded; or an award of front pay in lieu of reinstatement be awarded;

    iii.    Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

E. **On 5th Cause:**

    i.    Plaintiff has been damaged in an amount to be determined at trial but not less than $5,000,000.00;

    ii.    An injunction against QHPNY be awarded declaring Plaintiff's termination wrongful, enjoining employer from further violations and re-instatement with full seniority be awarded; or an award of front pay in lieu of reinstatement be awarded;

    iii.    Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

F. **On 6th Cause:**

    i.    Plaintiff has been damaged in an amount to be determined at trial but not less than $5,000,000.00;

    ii.    An injunction against QHPNY be awarded declaring Plaintiff's termination wrongful, enjoining employer from further violations and re-instatement with full seniority be awarded; or an award of front pay in lieu of reinstatement be awarded;

    iii.    Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

G. **On 7th Cause:**

    i.    Plaintiff has been damaged in an amount to be determined at trial but not less than $5,000,000.00;

    ii.    An injunction against QHPNY be awarded declaring Plaintiff's termination wrongful, enjoining employer from further violations and re-instatement with full seniority be awarded; or an award of front pay in lieu of reinstatement be awarded;

    iii.    Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and

Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

H. **On 8th Cause:**

    **i.**    Plaintiff has been damaged in an amount to be determined at trial but not less than $5,000,000.00;

    **ii.**    An injunction against QHPNY be awarded declaring Plaintiff's termination wrongful, enjoining employer from further violations and re-instatement with full seniority be awarded; or an award of front pay in lieu of reinstatement be awarded;

    **iii.**    Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

I. **On 9th Cause:**

    **i.**    Unpaid overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

    **ii.**    Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

J. **On 10th Cause:**

    **i.**    Unpaid overtime wages and equal amount as liquidated damages pursuant permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations and under NYLL Article 19 section 663;

    **ii.**    Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

K. **On 11th Cause:**

    **i.**    Statutory penalties of fifty dollars for each workday that Defendant failed to provide Plaintiff with proper annual wage notices, or a total of five thousand dollars each, as provided for by NYLL, Article 6, 198;

    **ii.**    Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

L. **On 12th Cause:**

    i.      Statutory penalties of two hundred fifty dollars for each workday that Defendant failed to provide Plaintiff with accurate wage statements, or a total of five thousand dollars, as provided for by NYLL, Article 6, 198;

    ii.     Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

M. **On 13th Cause:**

    i.      Plaintiff has been damaged in an amount to be determined at trial but not less than $5,000,000.00.

    ii.     Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

N. **On 14th Cause:**

    i.      Plaintiff has been damaged in an amount to be determined at trial but not less than $5,000,000.00.

    ii.     Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

O. **On 15th Cause:**

    i.      Plaintiff has been damaged in an amount to be determined at trial but not less than $5,000,000.00.

    ii.     Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

P. **On 16th Cause:**

    i.      Unpaid hours of work performed at the rate contracted per agreement.

    ii.     Plaintiff has been damaged in an amount to be determined at trial but not less than $5,000,000.00.

    iii.    Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

Q. **On 17th Cause:**

    **i.**      Plaintiff has been damaged in an amount to be determined at trial but not less than $5,000,000.00.

    **ii.**    Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

**R.** **On 18th Cause:**

    **i.**      Plaintiff has been damaged in an amount to be determined at trial but not less than $5,000,000.00.

    **ii.**    Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

**S.** **On 19th Cause:**

    **i.**      Plaintiff has been damaged in an amount to be determined at trial but not less than $5,000,000.00.

    **ii.**    Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

**T.** **On 20th Cause:**

    **i.**      Plaintiff has been damaged in an amount to be determined at trial but not less than $5,000,000.00.

    **ii.**    An injunction against QHPNY be awarded declaring, permanently enjoining employer from further violations.

    **iii.**   Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

**U.** **On 21ST Cause:**

    **i.**      Plaintiff has been damaged in an amount to be determined at trial but not less than $10,000,000.00.

    **ii.**    Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

**V.** **On 22ND Cause:**

    i.      Plaintiff has been damaged in an amount to be determined at trial but not less than $10,000,000.00.

    ii.     Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

W. **On 23RD Cause:**

    i.      Plaintiff has been damaged in an amount to be determined at trial but not less than $10,000,000.00.

    ii.     Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

X. **On 24TH Cause:**

    i.      Plaintiff has been damaged in an amount to be determined at trial but not less than $10,000,000.00.

    ii.     Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

Y. **On 25TH Cause:**

    i.      Plaintiff has been damaged in an amount to be determined at trial but not less than $5,000,000.00.

    ii.     Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

Z. **On 26TH Cause:**

    i.      Plaintiff has been damaged in an amount to be determined at trial but not less than $5,000,000.00.

    ii.     Awarding all such liquidated, compensatory, and punitive damages and other remedies and damages and all special damages and Prejudgment and post-judgment interest; and Reasonable attorneys' fees and costs of the action, as allowed under the laws for such willful intentional violation. Such other relief as this Court shall deem just and proper.

Dated: Plainview, New York
        June 10, 2019

Harsharan Sethi, Plaintiff Pro se
2 Kenneth St., Plainview, NY 11803

VERIFICATION

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

HARSHARAN SETHI, being duly sworn, deposes and states that he is the Plaintiff in the in this action, and has read the foregoing Verified Complaint, and knows the contents thereof; that the same is true to the deponent's knowledge, except as to matters therein stated to be alleged upon information and belief; and as to those matters the deponent believes them to be true.

Harsharan Sethi, Plaintiff Pro se
2 Kenneth St., Plainview, NY 11803

Sworn to before me this
10th day of June, 2019.

ROSANNE THOMAS
Notary Public - State of New York
NO. 01TH6381901
Qualified in Nassau County
My Commission Expires Oct 15, 2022